# United States Court of Appeals for the Federal Circuit

2007-5145

DISTRIBUTED SOLUTIONS, INC.,
and STR, L.L.C.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Thomas A. Coulter, LeClairRyan, of Richmond, Virginia, argued for plaintiffs-appellants.

Sean M. Dunn, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director.

Appealed from: United States Court of Federal Claims

Senior Judge James F. Merow

# United States Court of Appeals for the Federal Circuit

2007-5145

DISTRIBUTED SOLUTIONS, INC.,
and STR, L.L.C.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-466, Senior Judge James F. Merow.

_____

DECIDED: August 28, 2008

_____

Before LOURIE, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and MOORE, <u>Circuit Judge</u>.

MOORE, <u>Circuit Judge</u>.

Plaintiffs-appellants Distributed Solutions, Inc. (DSI) and STR, L.L.C. (STR) (collectively, the contractors) appeal the dismissal of their complaint by the United States Court of Federal Claims. For the reasons set forth below, we reverse the dismissal for lack of jurisdiction and remand for proceedings consistent with this opinion.

BACKGROUND

This case arises from a dispute related to the procurement of software for the Joint Acquisition and Assistance Management System program (JAAMS), a program initiated by the United States Agency for International Development (USAID) and the

Department of State (DoS) to develop a common computer platform between the two agencies.

In November 2003, the government issued a task order to SRA International, Inc. (SRA), one of nine prime contractors that had been previously awarded a Millennia Government Wide Acquisition Contract (GWAC) from General Services Administration (GSA) to provide technical services and support for information technology purposes. This task order, known as the Principal Resource Information Management Enterprise-wide task order (PRIME 2.2 task order), required SRA to "[s]upport USAID's acquisition and assistance function used for contracts and grants worldwide," and to enable "integration of commercial off-the-shelf packages from various vendors generally and the integration of these acquisition and assistance (A&A) systems with USAID and DoS accounting systems, Federal Procurement Data Systems and other e-gov initiatives."

In June 2005, the government, assisted by SRA, developed and issued a Request for Information (June RFI) soliciting software vendor responses. The June RFI stated that "[t]he purpose for this Request for Information (RFI) is to research possible commercial off-the-shelf (COTS) Acquisition and Assistance (A&A) solutions for JAAMS." It requested that vendors submit self-assessments of their products that would satisfy the requirements of JAAMS and present demonstrations of these products, which the RFI specified would be "for market research purposes only" and would "not result in a contract award." According to the RFI, the government would "review the results of the vendor self-assessments and the presentations to determine the next course of action for the JAAMS effort."

After completing its review of the responses to the June RFI, the government announced that it had "decided to pursue alternative courses of action." The government also decided that it would use SRA to integrate the various acquisition and assistance functions necessary to implement JAAMS under the PRIME 2.2 task order. SRA was thus tasked with selecting the vendors who would provide the software for the relevant functions, which it did by issuing an RFI of its own on August 12, 2005 to collect information on various types of product solutions (August RFI).

Based on the responses to this second RFI, SRA, with approval from the government, selected and awarded subcontracts to vendors providing the necessary software. Although DSI and STR had each submitted and demonstrated application software in response to the June RFI and the August RFI, neither contractor was selected by SRA as a subcontractor for JAAMS. The contractors separately filed protests with the General Accountability Office (GAO), which the GAO dismissed because "the procurement here was not 'by' the government" and "the procurement at issue was not conducted by a federal agency or a contractor acting as a procurement agent for a federal agency and thus is not subject to our jurisdiction."

The contractors then consolidated their protest for purposes of filing their complaint with the trial court. The contractors also filed a motion to supplement the administrative record. The government opposed this motion and concurrently moved to dismiss the contractors' complaint for lack of jurisdiction, arguing that the protest was not viable, as the contractors were essentially protesting the award of subcontracts by a contractor with a federal agency, and not an award of a contract by an actual federal agency.

The trial court agreed with the government, interpreting the contractors' complaint as based on "an expansive interpretation of 28 U.S.C. § 1491(b) to encompass the process which resulted in competition for the award of subcontracts rather than the award of federal agency contracts." The trial court concluded that the decision to task SRA with selecting software vendors for JAAMS was simply adding to the work of an existing task order that had already been awarded under a competitive process. Specifically, the trial court reasoned that the government's choice to conduct market research through the June RFI before determining that SRA would select vendors for JAAMS was functionally no different from a situation where the government would have initially included the JAAMS software procurement requirement in SRA's PRIME 2.2 task order. The trial court also concluded that, because SRA was not a purchasing agent for the government, the subcontracts awarded were not on behalf of a federal agency and therefore were not subject to a bid protest. Given its conclusion that jurisdiction was not present, the trial court declined to consider the contractors' motion to supplement the administrative record.

The contractors have timely filed their appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

As it involves a question of law, we review whether the Court of Federal Claims possesses subject matter jurisdiction de novo. See Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1300 (Fed. Cir. 2005). We review factual determinations for clear error. See Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

I.

On appeal, the contractors contend that the trial court misinterpreted the basis for their complaint. Contrary to the focus of the trial court's analysis, the contractors are not contesting SRA's award of the subcontracts. Rather, they are contesting the government's decision to task SRA with awarding subcontracts for the purchase of software instead of procuring the software itself through a direct competitive process.

We agree, as the contractors' complaint confirms as much. For example, paragraph 8 of the complaint alleges that the government "improperly delegated an inherently governmental function." As another example, paragraph 52 of the complaint alleges that "[b]y initially soliciting information from prospective bidders, improperly inserting SRA into the procedure to do directly what the [government] could not do— select a vendor without being subject to the federal procurement laws—the [government has] attempted to circumvent the federal procurement laws and foreclose any attempt to challenge their actions."

The contractors' memorandum in support of its opposition to the government's motion to dismiss repeatedly highlights this distinction as well. It states that the contractors are "challenging the government's decision to 'pursue an alternative course of action' by inserting SRA into the process instead of directly procuring from the process." Opp'n Mot. to Dismiss at 14. It also states that:

> The crux of the protest . . . is not the choice of issuing a task order to SRA, as opposed to a competing [] contractor for those same integration services; it is the government's decision to utilize a task order . . . to allow SRA to procure software for the government without competition instead of procuring the software directly through competitive means.

Again, the memorandum states, "In this protest, the Contractors are challenging a decision made during the procurement process 'in connection with' a proposed procurement, not just the ultimate procurement decision itself." Id. at 15; see also id. at 18 ("There was never a competitive procurement involving SRA, DSI, STR and others for the supply of software and integration services to USAID, nor has there been any explanation for the failure to conduct a competitive procurement."); id. at 19 (describing the challenged procurement as involving "the government's decision to eliminate all offerors from a competitive procurement opportunity and instead to simply order services from [SRA] and assign it noncompetitive procurement authority for separate software packages").

## II.

We now turn to whether the substance of the contractors' complaint, as correctly construed, has met the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491, added by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996). Specifically, § 1491(b) confers exclusive jurisdiction upon the Court of Federal Claims over bid protests against the government. Paragraph (1) of that subsection provides:

> the United States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).

There is no question that the contractors here are interested parties and not mere "disappointed subcontractors" without standing. To qualify as an "interested

2007-5145                                      6

party," a protestor must establish that: (1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement. See Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). Assuming that the June RFI was part of the challenged procurement process, the contractors have established themselves as prospective bidders in that they submitted qualifying proposals in response and, according to their complaint, were prepared to submit bids pursuant to the anticipated Request for Quotation (RFQ) or Request for Proposal (RFP) that typically ensues after an RFI is issued. See Compl. ¶¶ 7, 9, 10, 19. The contractors also possess a direct economic interest in the government action at issue in that they were both deprived of the opportunity to compete for the provision of acquisition and assistance solutions for JAAMS. The contractors allege that, as a result of the government's decision to forego the direct competitive process of procurement, they have collectively lost significant business opportunities amounting to approximately ten million dollars. Id. ¶ 6.

There is also no question that the contractors have alleged a number of statutory and regulatory violations by the government in choosing to forego the direct competitive procurement process and tasking SRA with the responsibility of selecting software vendors indirectly. These allegations include violations of the Competition in Contracting Act (CICA), 31 U.S.C. § 3551, et seq., the Small Business Act, 15 U.S.C. § 631(j)(3), and various Federal Acquisition Regulations (FAR). Though the government

contests the merits of these allegations,[1] it does not contend that any of these allegations are frivolous.

The only issue is whether the contractors' protest is "in connection with a procurement or a proposed procurement" under the scope of § 1491(b). In RAMCOR Services Group, Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999), we held that "the operative phrase 'in connection with' is very sweeping in scope." The Tucker Act does not define the terms "procurement" or "proposed procurement." Congress did, however, expressly define "procurement" in 41 U.S.C. § 403(2), a subsection of the statutory provisions related to the establishment of the Office of Federal Procurement Policy[2] in the Office of Management and Budget. These provisions give overall direction for federal procurement policies, regulations, procedures, and forms. See 41 U.S.C. §§ 401-20; Pub. Warehousing Co. K.S.C. v. Def. Supply Ctr. Phila., 489 F. Supp. 2d 30, 38-39, 39 n.7 (D.D.C. 2007). Specifically, § 403(2) states "'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403(2) (emphasis added). We conclude that it is appropriate to adopt this definition to determine whether a "procurement" has occurred

---

[1]     A non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction. See CCL, Inc. v. United States, 39 Fed. Cl. 780 (1997) (finding jurisdiction based upon the plaintiff's allegation that the government violated CICA while separately analyzing whether CICA was, in fact, violated); see also Corel Corp. v. United States, 165 F. Supp. 2d 12, 22 (D.D.C. 2001) ("It is hornbook law that a complaint need only contain an allegation of a non-frivolous claim made under a federal law in order to defeat a motion to dismiss for lack of subject matter jurisdiction.") (citations omitted).

[2]     The Office of Federal Procurement Policy plays a central role in shaping the policies and practices federal agencies use to acquire the goods and services they need to carry out their responsibilities.       See http://www.whitehouse.gov/omb/procurement/ (last checked August 1, 2008).

pursuant to § 1491(b).  Cf. 10 U.S.C. § 2302(3) (Armed Services Procurement Act also defining "procurement" by reference to the definition employed in 41 U.S.C. § 403).  We note that § 1491(b)(1) includes both actual procurements and proposed procurements.

Therefore, the phrase, "in connection with a procurement or proposed procurement," by definition involves a connection with any stage of the federal contracting acquisition process, including "the process for determining a need for property or services."  To establish jurisdiction pursuant to this definition, the contractors must demonstrate that the government at least initiated a procurement, or initiated "the process for determining a need" for acquisition and assistance solutions for JAAMS.

The trial court was certainly correct that adding work to an existing contract that is clearly within the scope of the contract does not raise a viable protest under § 1491(b)(1).  See AT&T Commc'ns, Inc. v. Wiltel, Inc., 1 F.3d 1201 (Fed. Cir. 1993).  The government did not merely add work to an existing contract in this case.  The government issued the June RFI which stated that, "The primary objective of this effort is to select and implement acquisition and assistance solutions that meet the unique functional requirements of both organizations . . . to research possible commercial off-the-shelf (COTS) Acquisition and Assistance (A&A) solutions for JAAMS . . . to determine if existing COTS A&A systems or combinations thereof can satisfy their requirements."  The government contends that, because the June RFI specified on its face that it was "for market research purposes only" and would "not result in a contract award," it was not part of any procurement process.  The contractors contend, on the other hand, that the June RFI represented "the beginning of the process for determining the type of software to be acquired" for JAAMS.  In support, the contractors have

identified statements in the government's own declarations that the June RFI was used to determine the parameters of the eventual procurement of the software at issue. Opp'n Mot. to Dismiss at 15 (citing AR170). The government itself conceded during oral argument that it had considered the possibility of procuring the JAAMS software directly from vendors and therefore collected information from the vendors via the June RFI. Oral Arg. at 16:52-17:18, available at http://oralarguments.cafc.uscourts.gov/mp3/2007-5145.mp3. The government additionally conceded that the government determined that procurement responsibilities were within the scope of the PRIME 2.2 task order after reviewing the responses from the vendors or potential contractors for the June RFI. Id. at 17:36-48.

Here, unlike AT&T, the government used an RFI to solicit information from outside vendors, and then used this information to determine the scope of services required by the government. While the government ultimately decided not to procure software itself from the vendors, but rather to add that work to its existing contract with SRA, the statute does not require an actual procurement. The statute explicitly contemplates the ability to protest these kinds of pre-procurement decisions by vesting jurisdiction in the Court of Federal Claims over "proposed procurements." A proposed procurement, like a procurement, begins with the process for determining a need for property or services. We conclude that the government had done as much in this case.

The trial court's judgment is

REVERSED AND REMANDED.[3]

---

[3]     We note that the trial court denied the contractors' motion to supplement the administrative record because it concluded it lacked jurisdiction over this case. In

light of our decision, the contractors should be permitted to renew their request for supplementation of the administrative record.

2007-5145                                  11