ALATECH HEALTHCARE,
L.L.C., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 09–332C.

United States Court of Federal Claims.

Filed: Oct. 28, 2009.

Reissued: Dec. 1, 2009.[1]

---

1. This Opinion was issued under seal on October 28, 2009, pursuant to the protective order filed in this case. The parties had an opportunity to advise the court of any "protected information" referred to in the Opinion. Neither party proposed any redactions.

Thomas Andrew Coulter, LeClair Ryan, Richmond, VA, for plaintiff.

David Alan Levitt, Commercial Litigation, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

Plaintiff filed a bid protest at the Government Accountability Office to overturn a procurement award issued by John Snow, Inc., to three foreign-based corporations. John Snow issued the award pursuant to its contract with the United States Agency for International Development. Federal law required that USAID award this contract domestically, according to plaintiff. Alatech's principal place of business is in Alabama.

Defendant agrees that USAID should prefer a domestic procurement, but only according to a best value analysis. Such an analysis should consider statutory requirements, such as cost, timely availability, and best health practices, the Government contends. *See* Pub.L. No. 108–199, 118 Stat. 3 (2004).

We denied plaintiff's petition for a preliminary injunction last month. The Agency for International Development employed reasonable methods for meeting the cost preference requirements of the statute through its prime contractor, John Snow, Inc. However, the parties have not argued or supplied sufficient information concerning the statute's balancing factors, timely availability and best health practices. We remand this case to the contracting officer to make additional findings, or to provide such findings to the court if already made.

## BACKGROUND

Congress passed legislation in 2004 designed to protect domestic corporations engaged in production of condoms. The statute provides that condom procurement awards should be awarded domestically "to the maximum extent feasible," taking into consideration "cost, timely availability, and best health practices." Pub.L. No. 108–199, 118 Stat. 3 (2004).

The United States Agency for International Development issued a solicitation for bidders on a contract for direct health-related services in 2006, and made the indefinite quantity contract award to John Snow, Inc. The contract included three health-related task orders, for Family Planning and Public Health, Avian Influenza, and Malaria. Snow was to purchase latex condoms for export to foreign countries pursuant to Task Order One.

USAID directed Snow to give domestic condom manufacturers a fifty-percent price preference under the task order. The Agency intended that the fifty-percent bid price bonus would satisfy the statutory requirement that domestic suppliers be preferred to the "maximum extent feasible." Snow issued a Request for Proposals according to USAID's directions. Three foreign corporations won portions of the contract despite the fifty-percent preference, however.

Alatech, the sole domestic bidder, filed a bid protest with the Government Accountability Office in 2008. The GAO dismissed the protest for lack of jurisdiction over an action by a non-governmental entity, John Snow, Inc. GAO did not reach the merits. Plaintiff sought preliminary and permanent injunctions, a declaratory judgment, and other forms of relief from this court. Alatech with-

drew its request for a preliminary injunction after negotiations with the Agency resulted in an extension of plaintiff's existing condom procurement contract.

The parties filed cross-motions for summary judgment. We conducted a hearing on jurisdictional issues in August 2009, and ruled that case law in the Court of Appeals for the Federal Circuit authorizes this court to accept jurisdiction. *See Distributed Solutions v. United States,* 539 F.3d 1340 (Fed. Cir.2008).

Plaintiff's protest alleges that USAID misinterpreted the Act's purpose by applying a fifty-percent price preference to Alatech's bid, which was not sufficient to guarantee plaintiff the contract. Plaintiff's cross-motion for summary judgment challenges GAO's ruling that it lacked jurisdiction to hear plaintiff's case, and seeks a permanent injunction on the foreign-based contract award. Alatech also asks that the court issue a declaratory judgment interpreting the Act's requirements.

The issue is whether the language in the statute, "to the maximum extent feasible," permits USAID to condition bid acceptance on "price, timely availability, and best health practices," as defendant contends. Plaintiff argues that award to a domestic corporation should be anticipated in every procurement. The effect of plaintiff's arguments is that USAID must award supply contracts to domestic corporations in every event.

## DISCUSSION

Defendant believes that the fifty-percent "generous price preference" allowed to domestic corporations satisfies the statutory requirements, while plaintiff's view of the statute is that the statutory requirement creates a preference that all but requires award to a domestic corporation. According to plaintiff, the statutory language means if at all possible. Defendant argues that the word "feasible" suggests a balancing test taking into account the phrase, "price, timely availability, and best health practices."

This court has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1).

▮ Defendant contends that John Snow's efforts on behalf of USAID did not constitute a procurement action. In that event, this court would lack jurisdiction over the issues presented. The only procurement action involved, according to the Government, was between USAID and John Snow, the prime contractor. That is, USAID awarded the prime contract to Snow to procure health-related services. Snow's awards to subcontractors to fulfill task orders was a private action. Bid discussions between foreign corporations and John Snow as prime contractor were solicited and evaluated by Snow and awarded by Snow. The prime acted as a private party as to Alatech, defendant contends, and not as a government agency. For that reason, the procurement does not fall within the Tucker Act's terms.

The Court of Appeals for the Federal Circuit held in *Distributed Solutions* that a procurement includes "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services." *See Distributed Solutions,* 539 F.3d at 1345 (citing 41 U.S.C. § 403(2)). Though this procurement involved a third party, John Snow, it falls within the Federal Circuit's interpretation of the Tucker Act as explained in *Distributed Solutions,* plaintiff argues. According to Alatech, USAID began planning this procurement in 2008 and put procurement procedures in place then. Also, USAID produced specifications for the contract and began discussing whether to task John Snow with the procurement. Moreover, a USAID official was a member of the panel that conducted the selection process, plaintiff states, thereby bringing the matter within the holding of *Distributed Solutions* and within the jurisdiction of this court.

Defendant attempts to distinguish *Distributed Solutions* by arguing that USAID did not issue its own request for proposal and then decide to use a contractor for its procurement functions, as in *Distributed Solu-*

*tions. See id.* In this case, USAID intended to use the prime contractor to handle the procurement from the beginning.

*Blue Water* is a case in which the Department of Energy contracted for day-to-day management of an energy facility, and the prime contractor subcontracted for cleaning services at the plant. *See Blue Water Env. v. United States*, 60 Fed.Cl. 48 (2004). This court ruled that a cleaning services contract awarded by a day-to-day management contractor was not a DOE procurement action and therefore was outside this court's jurisdiction. *Id.* at 54. Defendant contends that *Blue Water* compares more closely to *Alatech* than *Distributed Solutions*.

*Blue Water* is not helpful in analyzing this case, however. The prime management contractor issued an otherwise unrelated subcontract to a cleaning service. *Distributed Solutions* is a more recent case that factually is akin to *Alatech* in that the agency developed plans and specifications for the subcontractor to carry out in a field very similar to the functions allocated by the agency to the prime.

The Tucker Act as interpreted by *Distributed Solutions* gives this court jurisdiction to consider plaintiff's request for a permanent injunction.[2] *See Distributed Solutions*, 539 F.3d 1340. USAID's actions in planning, setting up, and defining the procurement process and procedure for John Snow, and keeping an official on Snow's selection committee, are indicia of the "stages of the process" found in 41 U.S.C. § 403(2) and cited by the Federal Circuit in *Distributed Solutions. Id.* at 1345.

■ Congress directed that domestic condom suppliers be preferred over foreign corporations. The issue on the merits is whether to apply a broad meaning to Congress' use of the word "feasible" in the preference statute, so that its meaning is closer to that of "possible," as plaintiff urges. Defendant seeks a narrower interpretation that permits the word "feasible" to be conditioned by other terms in the statute. Those include "con-

sider[ing] cost, timely availability, and best health practices." Defendant's version takes all the words of the statute into consideration and seems to align more closely with Congress' intent. The statute in question reads as follows:

[T]o the maximum extent feasible, taking into consideration cost, timely availability, and best health practices, funds appropriated in this Act or prior appropriations Acts that are made available for condom procurement shall be made available only for the procurement of condoms manufactured in the United States.

Pub.L. No. 108–199, 118 Stat. 3 (2004).

The parties agree that the words and phrases, "maximum extent feasible, ... cost, timely availability, and best health practices, .... [and] shall" are pivotal to a ruling on the meaning or application of this section. Plaintiff and defendant have not uncovered a definition or explanation to assist the court in this interpretation

■ We employ rules of statutory construction and attribute to Congress a consistent meaning throughout. Plaintiff is correct in arguing that words must be given their plain and ordinary meaning when construing a statute, if possible. Black's Law Dictionary provides "feasible" as a synonym for "practicable," which in turn is defined as "reasonably capable of being accomplished." Blacks Law Dictionary (8th ed.2004). "Feasible" is defined popularly as capable of being done or carried out. The word "shall" generally is regarded as suggesting an obligation, or a mandatory provision; *e.g.,* "[h]as a duty to; more broadly, is required to." Blacks Law Dictionary (8th ed.2004).

Plaintiff terms the mandate of this statute a "super-preference." That is, the Agency must favor domestic products over foreign suppliers unless it is not feasible, or infeasible. Usage suggests that "possible" connotes a circumstance with less leeway than does "feasible." The word "possible" asks whether a thing can be done at all, physically

---

**2.** Defendant argues that even if this court has jurisdiction, plaintiff should have complained before the bids were awarded. This argument remains unclear. If defendant is arguing waiver,

where plaintiff had an obligation to notify the Agency pre-award, we do not have sufficient authority to consider that assertion as the case stands.

or otherwise, while feasible suggests that some discretion is expected; for example: "It may be possible, but is it feasible?"[3]

If "feasible" as Congress used it in the statute is intended to suggest that discretion should be employed by the Agency making the decision, Congress gives the Agency standards to apply: "taking into consideration cost, timely availability, and best health practices...." That language would be superfluous given an interpretation that equated feasible with possible. That is, if Congress wanted the Agency to award contracts only to domestic suppliers, it might have been unnecessary for it to give the Agency standards to apply when making the decision.

If the word "feasible" in the statute has the same meaning as the word "possible," then plaintiff is correct: the contract must be awarded to the incumbent irrespective of its missing the low bid plus fifty percent. On the other hand, one would have to account for the "taking into consideration" language, the purpose of which would not then be evident. If plaintiff's interpretation is correct, the fifty percent preference, termed "generous" by the Government, would have no meaning. Cost would not be a factor to be considered because it would remain "possible" for the Agency to award the contract to Alatech regardless of price.

Defendant interprets the statute as calling for a type of best-value analysis. Plaintiff prefers an interpretation that would require that the contract be awarded to a domestic corporation if at all possible. We do not agree that the Agency would be given the luxury of awarding this contract on a best value basis, but the statute interpreted as plaintiff insists omits several phrases that seem important.

The interpretation that fits a commonsense reading of the statute is that USAID has a duty to produce a domestic procurement award so long as the award does not violate combined considerations of cost, timely availability, and best health practices. The Agency may look to foreign suppliers only if such an award would violate the considerations set out in the statute. That is, it may consider other suppliers only when their efforts on behalf of domestic suppliers are exhausted.

■ USAID's use of a fifty percent preference was a reasonable effort to comply with one aspect of the Act's conditions applicable to its use of the word "feasible." We do not have the benefit of other considerations employed by the Agency to balance cost factors with timely availability and best health practices.

## CONCLUSION

The Government acted through USAID to consider whether to use a prime contractor for procurement, to provide the prime's specifications and parameters for the job, and to define the governing authority for that contractor. These functions bring the case within the "process for determining a need for property or services," as described by the Federal Circuit Court of Appeals in *Distributed Solutions*. *See Distributed Solutions*, 539 F.3d 1340 at 1346.

This court has jurisdiction pursuant to the authority of *Distributed Solutions*. The Clerk of Court will remand this case to a contracting officer authorized to administer this contract on behalf of the Agency for International Development. The contracting officer will make findings on factors other than cost used by the Agency in awarding this contract, if applicable, or provide such findings that may have been made to this court as soon as possible. If such information cannot be provided within thirty days, the contracting officer will submit a status report through counsel on or before November 23. This Opinion will be filed under seal.

3. The Americans with Disabilities Act includes this clarification: "[T]he phrase 'maximum extent feasible,' as used in this section, applies to the occasional case where the nature of an existing facility makes it virtually impossible to comply...." 28 C.F.R. § 36.402(c). This legislative history seems to equate "maximum extent feasible" with all efforts short of impossibility. "Feasible" is not equated exactly with "possible" in the explanation, but with the opposite of "virtually impossible." It does not seem to contemplate a balancing test, however, taking into consideration standards such as "cost, timely availability, and best health practices."

The parties have until November 6 to submit redactions to this court.

REMANDED.