# United States Court of Appeals for the Federal Circuit

---

**AGUSTAWESTLAND NORTH AMERICA, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

**AIRBUS HELICOPTERS, INC.,**
*Defendant*

---

2017-1082

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00877-SGB, Chief Judge Susan G. Braden.

---

Decided: January 23, 2018

---

DENNIS J. CALLAHAN, Rogers, Joseph, O'Donnell, San Francisco, CA, argued for plaintiff-appellee. Also represented by NEIL H. O'DONNELL; JEFFERY M. CHIOW, LUCAS TAYLOR HANBACK, Washington, DC.

ANTHONY F. SCHIAVETTI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant.

Also represented by FRANKLIN E. WHITE, JR., ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER.

_____

Before PROST, *Chief Judge,* CHEN and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

The United States appeals from a decision of the Court of Federal Claims enjoining the United States Army from proceeding with, or awarding, a contract to Airbus Helicopter, Inc. The Court of Federal Claims found that Army Execution Order 109-14, which implemented the Army's Aviation Restructure Initiative designating the UH-72A Lakota helicopter as the Army's "Institutional Training Helicopter," was a procurement decision in violation of the Competition in Contracting Act and relevant provisions of the Federal Acquisition Regulation. After supplementing the administrative record, the Court of Federal Claims found that the Army's decision to purchase sixteen UH-72A Lakota helicopters from Airbus also violated the Competition in Contracting Act and the Federal Acquisition Regulation because the Sole Source Justification and Approval was arbitrary and capricious. We conclude that Execution Order 109-14 was not a procurement decision subject to review, that the Sole Source Justification and Approval was not arbitrary and capricious, and that it was an abuse of discretion to supplement the administrative record. Accordingly, we reverse the trial court's decision and vacate the preliminary injunction.

I

On June 22, 2005, the Army issued an Acquisition Strategy to procure 322 Light Utility Helicopters (LUH) by full and open competition. Both AgustaWestland and Airbus submitted bids. On June 30, 2006, Airbus was awarded Contract No. W58RGZ-06-C-0194 (2006 Con-

tract) for $43,090,522.[1]   AgustaWestland filed an unsuccessful bid protest of the award decision with the Government Accountability Office.

The 2006 Contract required that Airbus provide a base quantity of eight low rate initial production UH-72A Lakota helicopters.  The 2006 Contract also provided that, during each Program Year 2 through 10, the Army could exercise options to purchase up to a total of 483 UH-72A Lakota helicopters.  The last date that the Army could exercise an option was on September 30, 2015.  The 2006 Contract expired on June 30, 2016.

In January 2012, the President of the United States and the Secretary of Defense announced new Strategic Guidance that reduced the Defense Budget and called for the "resizing/reshaping" of the Armed Forces.  J.A. 5196–97.  To implement the Strategic Guidance, in August 2013, the Chief of Staff of the Army issued the Aviation Restructure Initiative ("restructuring initiative" or "initiative"), which was "designed to deliver the best Army Aviation force possible within resource constraints."  J.A. 5197.  The restructuring initiative, therefore, "divest[ed] legacy systems, [and] invest[ed] in modernization of Aviation best systems" by "redistributing assets" and "reducing aircraft types and standardizing Aviation

---

[1]   The 2006 Contract was awarded to European Aeronautics Defense and Space Company – North America (EADS-NA).  The contract integrated two major subcontractors: Airbus Helicopters, Inc. (formerly known as American Eurocopter (AE)) and Helicopter Support, Inc. (HSI).  In a company restructuring, EADS-NA became Airbus Defense and Space, Inc. (ADSI) effective January 2014.  As part of the reorganization, all new Army helicopter programs became the responsibility of Airbus Helicopters, Inc.

brigade designs." *Id.* The initiative officially retired the TH-67, a single-engine aircraft used for training at Fort Rucker, Alabama, and designated the UH-72A Lakota—the helicopter procured by the Army in the 2006 Contract with Airbus—the "Institutional Training Helicopter." J.A. 5198. The initiative was formally implemented by the issuance of Army Execution Order 109-14 on April 3, 2014. J.A. 5196–98.

To comply with the objectives of the restructuring initiative, the Army determined that it needed to increase the UH-72A Lakota helicopter program by 110 helicopters, from 317 to 427 helicopters. J.A. 2775. Initially, the Army considered a sole source acquisition for 155 UH-72A Lakota helicopters, and published a sources sought notice on September 4, 2014, to explore this option.[2] J.A. 2803.

On September 19, 2014, AgustaWestland filed a Complaint for Declaratory and Injunctive Relief in the United States Court of Federal Claims, arguing that the Execution Order was a procurement decision. Because no final decision "with respect to the competitive process to be used" had been made, the Court of Federal Claims stayed proceedings. J.A. 7.

Ultimately, the Army decided not to pursue the procurement of 155 UH-72A Lakota helicopters. It chose to exercise the remaining options on the 2006 Contract with Airbus permitting the procurement of 412 UH-72A Lakota helicopters, but leaving the Army sixteen helicopters

---

[2]    Although the Army only needed 110 UH-72A Lakota helicopters, it sought to procure additional UH-72A Lakota helicopters for potential sales to foreign militaries or to other Government agencies. J.A. 2803.

short of its total requirement.[3]  J.A. 2956.  Because Airbus "has exclusive ownership of all data rights required to produce, maintain, and modify the UH-72," the Army was faced with procuring sixteen alternate aircraft, or procuring sixteen helicopters from Airbus through a sole source follow-on contract.  J.A. 2957.  On December 10, 2015, the Army issued a Justification and Approval (J&A) to acquire the UH-72A Lakota helicopters from Airbus "on an other than full and open competition basis."  J.A. 2965. The Army justified this decision based on the costs and delay associated with "procuring and sustaining an alternate aircraft" separate from the UH-72A Lakota.  J.A. 2958.

Subsequently, AgustaWestland filed a Supplemental Complaint, a Motion for Preliminary Injunction, and a Motion for Judgment on the Administrative Record.  The Government opposed AgustaWestland's motions and filed a Cross-Motion for Judgment on the Administrative Record.  Relevant to this appeal, the Court of Federal Claims found that the April 3, 2014 Execution Order was a procurement decision in violation of the Competition in Contracting Act (CICA) and the relevant Federal Acquisition Regulation (FAR) provisions.  The Court of Federal Claims then determined that it could not "conduct 'effective judicial review' without supplementing the Administrative Record," J.A. 25 n.33, and therefore considered evidence not contained in the administrative record. After supplementing the administrative record, the Court of Federal Claims found that the Army's J&A and deci-

---

[3]　The Army initially determined it was fifteen UH-72A Lakota helicopters short of its requirement, but one UH-72A Lakota helicopter needed to be replaced after it was destroyed during a mission, leaving the Army sixteen short of its requirement.  J.A. 2956.

sion to purchase sixteen UH-72A Lakota helicopters without full and open competition was arbitrary and capricious, and thus in violation of CICA and the relevant FAR provisions.  Accordingly, the Court of Federal Claims enjoined the Army from proceeding with, or awarding, the contract to Airbus.

The United States appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1).

## II

The Court of Federal Claims determined that it had jurisdiction to review whether the Execution Order violated CICA and the FAR's competitive procedures because it was "a quintessential procurement decision."  J.A. 19. The Tucker Act provides the Court of Federal Claims with jurisdiction over an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  We review a decision of the Court of Federal Claims regarding its own jurisdiction de novo.  *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016).

The terms "procurement" and "proposed procurement" are not defined by the Tucker Act or CICA.  In *Distributed Solutions, Inc. v. United States*, we held that it was appropriate to use the definition of "procurement" set forth in "41 U.S.C. § 403(2), . . . the statutory provisions related to the establishment of the Office of Federal Procurement Policy in the Office of Management and Budget," to determine whether a procurement has occurred pursuant to 28 U.S.C. § 1491(b).  539 F.3d 1340, 1345 (Fed. Cir. 2008). Section 403(2) defines "procurement" as including "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion

and closeout." *Id.* (emphasis omitted).[4] We clarified that to "establish jurisdiction pursuant to this definition, [a contractor] must demonstrate that the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition." *Id.* at 1346.

One objective of the restructuring initiative, formalized in the Execution Order, was to "[r]eplace the aging Aviation institutional training fleet at Fort Rucker." J.A. 5197. To accomplish this objective, the initiative instructed that "the Institutional Training Helicopter fleet is converted to UH-72s and the legacy TH-67 training helicopter is divested." J.A. 5198. The initiative did not, however, direct or even discuss the procurement of UH-72A Lakota helicopters. In fact, the initiative only contemplated using existing Army assets. *See* J.A. 5198 ("The Aviation Restructure Initiative will be accomplished by a variety of means; conversions, inactivations, relocations, re-flagging and activations using existing organizational structure unless otherwise directed."); *see also* J.A. 5197 ("The ARI concept will adapt a design to provide efficient and effective support by redistributing assets in a manner that most effectively addresses the nation's needs at home and abroad.").

The Execution Order, therefore, was not a procurement decision subject to Tucker Act jurisdiction because it did not begin "the process for determining a need for property or services." *Distributed Sols.*, 539 F.3d at 1345. The Execution Order simply formalized the Army's decision designating the UH-72A Lakota as the Army's training helicopter. Because the Execution Order was not a procurement or proposed procurement, the Court of

---

[4]   In 2011, § 403(2) was recodified at 41 U.S.C. § 111.

Federal Claims lacked jurisdiction to review whether it violated CICA and the FAR.

## III

Next, we turn to the question of whether acquiring the UH-72A Lakota helicopters from Airbus "on an other than full and open competition basis" was arbitrary and capricious. We review the merits of a bid protest under the standards set forth in the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). A court may set aside an agency decision that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## A

As a preliminary matter, in reviewing whether acquiring the UH-72A Lakota helicopters from Airbus "on an other than full and open competition basis" violated CICA and relevant FAR provisions, the Court of Federal Claims supplemented the administrative record and relied on this supplemental evidence to decide this issue. "Evidentiary determinations by the Court of Federal Claims, including motions to supplement the administrative record, are reviewed for abuse of discretion." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1378 (Fed. Cir. 2009).

Because we find that the administrative record was sufficient to determine whether the Government acted in an arbitrary or capricious manner, the Court of Federal Claims abused its discretion by sua sponte supplementing the administrative record.

"The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Id.* at 1379 (emphasis omitted)

(citation omitted).  The purpose of limiting judicial review to the record actually before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively de novo review."  *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).  Therefore, "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review."  *Id.* (internal quotation marks and citation omitted).  Judicial review is "effective" if it is consistent with the APA.  *Id.* at 1381 ("The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA.").

Here, the Court of Federal Claims concluded that it could not conduct "effective judicial review" without supplementing the administrative record.  *See, e.g.*, J.A. 6 n.6 ("Since this relevant congressional communication was omitted from the Administrative Record, the court has determined that it cannot conduct 'effective judicial review,' without supplementing the Administrative Record with this public document, which is otherwise subject to Fed. R. Evid. 201(b)."), 25 n.34 ("The court has determined that it cannot conduct 'effective judicial review,' without supplementing the Administrative Record with this public document, which is otherwise subject to Fed. R. Evid. 201(b).").  The Court of Federal Claims was, however, required to explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether the award of a sole-source contract to Airbus was arbitrary and capricious.  *Axiom*, 564 F.3d at 1379–80.  It did not do so here, but, rather, provided nothing more than conclusory statements that it could not conduct effective judicial review without the supplemented material.  Those statements are insufficient under *Axiom*.  We have examined the administrative

record and find it sufficient to review the Army's sole source procurement award, as discussed below. Thus, we conclude that the trial court abused its discretion by supplementing the record, and relying on the supplemental evidence to reach its decision.

## B

In the context of bid protests, a bid award may be set aside if either "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Here, the Court of Federal Claims found that the justifications supporting the sole-source procurement provided in the J&A were not sufficient and, further, that the procurement official's decision was arbitrary and capricious.

Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," recognizing that "contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Id.* at 1332–33 (internal quotation marks and citation omitted). "[T]he disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Id.* at 1333 (internal quotation marks and citation omitted).

CICA requires agencies to use competitive procedures to obtain "full and open competition" in conducting "a procurement for property or services." 10 U.S.C. § 2304(a). CICA, however, exempts agencies from this requirement when the property or services "are available from only one responsible source . . . and no other type of property or services will satisfy the needs of the agency." 10 U.S.C. § 2304(c)(1). A sole-source award is permitted,

therefore, when it is "a follow-on contract for the continued development or production of a major system or highly specialized equipment" and "it is likely that award to any other source would result in (A) [s]ubstantial duplication of cost to the Government that is not expected to be recovered through competition, or (B) [u]nacceptable delays in fulfilling the agency's requirements." FAR 6.302-1(a)(2)(ii) (48 C.F.R. § 6.302-1). A "major system" includes a Department of Defense system exceeding $835 million in total expenditures. FAR 2.101.

Prior to awarding a sole-source contract, a contracting officer must: (1) justify the sole-source award in writing; (2) certify the "accuracy and completeness of the justification"; and (3) obtain the approval of the senior procurement executive of the agency. FAR 6.303-1(a). The FAR sets forth the specific information required to support each justification, including "[a] determination by the contracting officer that the anticipated cost to the Government will be fair and reasonable"; "[a] description of the market research conducted (see Part 10) and the results"; "for follow-on acquisitions as described in 6.302-1(a)(2)(ii), an estimate of the cost to the Government that would be duplicated and how the estimate was derived"; and "[a]ny other facts supporting the use of other than full and open competition, such as . . . [an] [e]xplanation of why technical data packages, specifications, engineering descriptions, statements of work, or purchase descriptions suitable for full and open competition have not been developed or are not available." FAR 6.303-2(b).

It is undisputed that the J&A, setting forth the Army's decision to acquire sixteen UH-72A Lakota helicopters on an other than competitive basis, was a procurement decision subject to review. The Court of Federal Claims determined that the J&A, however, was not a "follow-on contract" subject to the exception set forth in FAR 6.302-1 because it is a "new contract." J.A. 22. "Follow-on contract" is not explicitly defined in the FAR,

but at the very least, it is a "contract for the continued development or production of a major system or highly specialized equipment." FAR 6.302-1(a)(2)(ii). It is irrelevant, therefore, whether a "follow-on contract" is a new, separate contract or a supplement to an existing contract, as long as it is a "contract for the continued development or production of a major system or highly specialized equipment." Accordingly, the J&A is a "follow-on contract" for a "major system," because it is a "contract for the continued production" of a Department of Defense system exceeding $835 million in total expenditures. *See* J.A. 2962.

The Court of Federal Claims found that the justifications for the sole-source award to Airbus, set forth in the J&A, were insufficient. We conclude, however, that the agency provided a coherent and reasonable explanation of its exercise of discretion, and therefore the justifications for the sole-source award are not arbitrary and capricious.

The J&A contains a detailed analysis justifying the sole-source award to Airbus. The J&A explained that Airbus was the only responsible source for the helicopters because it "has exclusive ownership of all data rights required to produce, maintain, and modify the UH-72." J.A. 2957. The J&A relies on two justifications for why "no other aircraft will satisfy the Army's requirement": (1) "the estimated duplication of costs that would be incurred in procuring and sustaining an alternative aircraft is significant and is not expected to be recovered in its entirety," and (2) procuring sixteen helicopters from a different source would result in an unacceptable delay as it would take up to three years and cause "significant gaps in the Army National Guard's ability to meet its assigned missions of Homeland Security, Disaster Response, Search and Rescue, MEDEVAC, and border patrol" that could expose the nation to security and safety risks. J.A. 2958.

To support its first justification, the Government prepared an Independent Government Estimate (IGE), "to estimate the duplication of costs in conducting another competitive action (for an alternative helicopter)." J.A. 2960. The estimated total duplication costs provided in the IGE were "derived by considering the costs of conducting the source selection, increased procurement costs of an alternate aircraft, [and] the impact to sustaining another aircraft separate from the Lakota." J.A. 2858.

The Court of Federal Claims found that the IGE was insufficient because it did not consider "the potential increased cost that Airbus can charge for its intellectual property [the Technical Data Package]," or whether "Airbus extracted or could extract a supra competitive price on its UH-72A Lakota helicopters, because of the Technical Data Package." J.A. 23. In 2013, the Government requested from Airbus an estimate of the cost to acquire the Technical Data Package for the UH-72A Lakota helicopter. Airbus "responded that the TDP is not for sale and [Rough Order Magnitude] pricing will not be provided." J.A. 2963. Because Airbus was not willing to sell the TDP, the "potential increased costs that Airbus can charge for its intellectual property" or whether "Airbus extracted or could extract a supra competitive price" is irrelevant.

Ultimately, the J&A needs to find that "the anticipated cost to the Government will be fair and reasonable." FAR 6.303-2(b)(7). In doing so, the government conducted an IGE to determine "an estimate of the cost to the Government that would be duplicated and how the estimate was derived." Based on the IGE, the J&A found that "the estimated duplication of costs that would be incurred in procuring and sustaining an alternative aircraft is significant and is not expected to be recovered in its entirety." J.A. 2958. Ultimately, the J&A concluded that "the anticipated cost or price to the Government for this contract action will be fair and reasonable" after reviewing

"cost/price analysis, audit, procurement history, commercial catalogs, fact finding and negotiations." J.A. 2694. The evidence in the administrative record sufficiently supports the J&A's first justification. *See* FAR 6.303-2(b)(9)(ii).

To support its second justification—procuring sixteen helicopters from a different source would result in an unacceptable delay—the J&A relied on the "schedule experienced on the competition conducted for the original LUH production contract." J.A. 2958. Notably, it would "take a minimum of 24 months to produce the competitive package and prepare the solicitation, receive all proposals and confirm the contractor's producibility and technical capabilities, conduct discussions and complete evaluations, and ultimately select an offeror for contract award." *Id.* It would then take "no less than an additional 12 months for initial production, first article review, and fielding of the aircraft, accumulating in a timeline of more than 3 years." *Id.* Such a delay "introduces risk to the nation's security and safety." *Id.* The evidence in the administrative record is sufficient to support the J&A's determination that an award to any other source would result in unacceptable delays.

Lastly, the Court of Federal Claims also found that the "Contracting Officer's decision that 'the justification [is] adequate to support other than full competition,' *prior* to the review and approval of Legal Counsel and the [Special Competitive Advocate] *prima facie* was arbitrary and capricious." J.A. 28 (alteration and emphasis in original). The Contracting Officer is responsible for justifying the sole-source award and certifying the accuracy and completeness of the justification. Further, the justification is only required to be approved by the senior procurement executive. Because the J&A was approved by the senior procurement executive in compliance with the FAR, the fact that Legal Counsel and the Special Competition Advocate approved the J&A after the Con-

tracting Officer does not establish that the J&A was *prima facie* arbitrary or capricious.  J.A. 2965.

Because the J&A sufficiently supports the Army's decision to award a sole-source follow-on contract because it is "likely that award to any other source would result in (A) [s]ubstantial duplication of cost to the Government that is not expected to be recovered through competition, or (B) [u]nacceptable delays in fulfilling the agency's requirements,"  FAR 6.302-1(a)(2)(ii) (48 C.F.R. § 6.302–1), it is not arbitrary and capricious.

## IV

Because we conclude that the Execution Order 109-14 was not a procurement decision subject to review, it was an abuse of discretion to supplement the administrative record, and the Sole Source Justification and Approval was not arbitrary and capricious, we reverse the trial court's decision and vacate the preliminary injunction.

**VACATED**

Costs to Appellant.