COOK, J., delivered the opinion of the court, in which BOGGS, C. J., BATCHELDER, GILMAN, GIBBONS, ROGERS, and SUTTON, JJ., joined.
COLE, J. (pp. 770-73), delivered a separate concurring opinion, in which DAUGHTREY, J., joined.
BOYCE F. MARTIN, Jr., J. (pp. 773-78), delivered a separate dissenting opinion, in which MOORE and CLAY, JJ., joined.
OPINION
COOK, Circuit Judge.
Plaintiffs (collectively “truckers”) appeal the district court’s order dismissing their claims for lack of subject matter jurisdiction. At issue is whether the truckers’ claims are essentially contractual and therefore must be heard in the Court of Federal Claims under the Contract Disputes Act. We hold that the claims are essentially contractual and affirm the district court’s dismissal.
I. BACKGROUND AND PROCEDURAL HISTORY
Plaintiff truckers are independent contractors who transport mail for the United States Postal Service (“USPS”). Under their contracts, USPS pays the truckers based in part upon their annual estimates of the cost and-amount of fuel they will use. If fuel costs increase, their contracts entitle them to an adjustment in the contract price.
*768 In 2000, the USPS introduced a new fuel-purchasing program. Under the plan, USPS uses its buying power to negotiate fuel prices on behalf of mail transporters such as the Plaintiffs. The truckers then buy fuel directly from the fuel suppliers at the USPS-negotiated wholesale prices. USPS implemented this plan by adding “Amendment 3” to its new and renewal mail transportation contracts. That amendment requires that the truckers purchase fuel from USPS-designated suppliers, either at USPS-designated facilities or delivered to the truckers’ own fueling facilities.
In their First Amended Complaint below, the truckers claimed that, by requiring them to participate in the Amendment 3 fuel plan, USPS breached its contracts with the truckers, breached an implied covenant of good faith and fair dealing, violated the truckers’ constitutional liberty and property rights, and violated the Separation of Powers Clauses of the United States Constitution by engaging in “arbitrary agency action without legal authority.”
USPS moved to dismiss the First Amended Complaint on laek-of-subjeet-matter-jurisdiction grounds. The district court responded by deciding that the truckers failed to adequately plead their claims, but gave them thirty days to amend their complaint. The truckers’ Second Amended Complaint dropped the breach of contract and breach of implied covenant claims. It alleged only that the Plan violated the truckers’ Fifth Amendment liberty and property rights, violated postal regulations, and constituted “arbitrary agency action without statutory authority.”
The district court dismissed the case, holding that because the truckers’ constitutional and regulatory claims were essentially contractual, jurisdiction was properly in the Court of Federal Claims, not the United States District Court.
II. ANALYSIS
A. The Jurisdictional Test
Under the Contract Disputes Act (“CDA”), 41 U.S.C. §§ 601-613, the Court of Federal Claims has exclusive jurisdiction for judicial review over any dispute relating to a contract for goods and services between an executive agency of the United States government and an independent contractor. Id. § 609(a)(1). The CDA bars district court jurisdiction if the court determines that a plaintiffs claims against a government agency are “essentially contractual” in nature. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1136 (6th Cir.1996). “‘The classification of a particular action as one which is or is not [essentially contractual] depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate).’ ” Id. (quoting Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.C.Cir.1982)). “The plaintiffs title or characterization of its claims is not controlling. ‘[A] plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions.’ ” Id. (alteration in original) (quoting Ingersoll-Rand Co. v. United States, 780 F.2d 74, 77 (D.C.Cir.1985)).
Thus if, as USPS argues, the truckers’ claims are essentially contractual, then the Court of Federal Claims has exclusive subject matter jurisdiction. But if, as the truckers contend, their claims are genuinely based on constitutional and statutory rights, then the district court has subject matter jurisdiction. We agree with the district court that all of the claims are essentially contractual, and therefore affirm its dismissal of the case.
*769 B. The Fifth Amendment Claims
The truckers argue that by interfering with their right to control their fuel supply, USPS deprived them of their property without due process or just compensation. But whether the truckers have a right to control their fuel supply depends upon whether their contracts with USPS afford such a right—in particular, whether Amendment 3 validly requires the truckers to comply with the fuel plan. The truckers, in effect, seek specific performance of the contracts as they stood before any amendment. Their objection to the contract amendments is the essence of their claims; both the source of the rights upon which the Plaintiffs base their claims (contracts with USPS to transport mail), and the type of relief appropriate (reformation of the contracts to bar enforcement of Amendment 3) manifest the claims’ contractual nature. The district court appropriately determined that the truckers’ characterization of their claims as non-contractual was an effort to obscure the claims’ true nature.
Additionally, if the truckers contend correctly that the contracts do not validly restrict their right to control their fuel supply, and USPS nevertheless abridged that right, then the proper recourse would be a breach-of-contract claim, not a takings claim. See Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed.Cir.2001) (“[T]he concept of a taking as a compensa-ble claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.” (citations and internal punctuation omitted)).
C. The Regulatory Claims
The truckers farther argue that USPS lacked authority to develop the fuel plan because USPS regulations prohibit USPS from interfering with the operation of its contractors’ businesses, and that in the absence of regulatory authority, USPS’s insistence that the truckers comply with the fuel plan violates their right to due process. Specifically, the truckers cite two regulations that they contend render the fuel plan invalid: USPS’s Purchasing Manual (stating that “[t]he objective of any purchasing action is to meet contract objectives, no.t control the supplier’s business”) and its Management Instructions (stating that “[pjurchases of fuel may be made from any source at the option of the fuel contractor”).
This argument, however, conflicts with the truckers’ position that the amendments to their contracts do not obligate them to purchase fuel from the designated suppliers: the amendments cannot be both contractually invalid (as the truckers contend in advancing their Fifth Amendment claim, arguing that the amendments do not constitute consent to the fuel plan) and contractually valid (as the truckers contend when arguing that the amendments are inconsistent with USPS regulations). If the amendments are contractually invalid and therefore do not compel the truckers to comply with the fuel plan, then the amendments cannot also violate USPS regulations by compelling the truckers to comply with the fuel plan.
This inconsistency, although perfectly acceptable as an alternative-pleading strategy, nevertheless highlights the contractual nature of the truckers’ claims, because their contracts with USPS are at the core of both sides of the truckers’ argument. Regardless of whether the truckers argue that the new fueFpurchase requirements violate the contracts, or that the contracts *770 violate USPS regulations, their claims are contractual. That the fuel plan might violate USPS regulations does not transform a claim into one that is regulatory and not contractual. See Ingersoll-Rand Co., 780 F.2d at 78 (“The question presented by the complaint could be phrased as whether the contract forbids termination under these conditions. That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations.”) Otherwise, because every government agency is bound to follow some set of regulations, every government contractor could recast its contract claims as regulatory claims, thereby nullifying the CDA. Cf. United States v. J & E Salvage Co., 55 F.3d 985, 988 (4th Cir.1995) (“Effective enforcement of the jurisdictional limits of the CDA mandates that courts recognize contract actions that are dressed in tort clothing.”); Melanson v. United Air Lines, Inc., 931 F.2d 558, 561 n. 1 (9th Cir.1991) (“Nearly any contract claim can be restated as a tort claim. The RLA’s grievance procedure would become obsolete if it could be circumscribed by artful pleading.”).
D. Relief Available from the Court of Federal Claims
Finally, the truckers contend that the district court has jurisdiction because the Court of Federal Claims cannot grant the injunctive relief they seek. We initially note that the CDA provides that “[a]ll claims by a contractor against the government relating to a contract ... shall be submitted to the contracting officer for a decision,” 41 U.S.C. § 605(a) (emphasis added), and that the contractor may seek judicial review only in the Court of Federal Claims. Id. § 609(a)(1). Thus — because the CDA does not condition that court’s jurisdiction upon the relief sought, but upon whether claims relate to a contract — the relief available in the Court of Federal Claims is irrelevant. See Inger-soll-Rand Co., 780 F.2d at 80 (holding that a claim for specific performance of a government contract “must be resolved by the Claims Court,” even though the Claims Court had no power to grant specific performance).
Further, while the truckers correctly assert that the Court of Federal Claims cannot grant the relief they seek outright, that court can achieve the same result — freedom from compliance with the fuel plan — if it finds such a result appropriate, by granting a contractual remedy such as reforming the truckers’ contracts with USPS. See Ho v. United States, 49 Fed.Cl. 96, 100 (2001) (“Reformation of a contract is an equitable remedy that may be invoked in this court ... when the contract contains ... provisions that are contrary to law.” (citing Am. Tel. & Tel. Co. v. United States, 177 F.3d 1368, 1376 (Fed. Cir.1999); McClure Elec. Constructors, Inc. v. Dalton, 132 F.3d 709, 711 (Fed.Cir.1997); Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed.Cir.1994))).
III. CONCLUSION
Because all of the truckers’ claims relate to their contracts with USPS, the Court of Federal Claims has exclusive jurisdiction over this case. Therefore, we affirm the district court’s dismissal.