**K–MAR INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE and United States Department of the Army, Defendants.**

**Case No. CIV–10–0984–F.**

United States District Court,
W.D. Oklahoma.

Nov. 4, 2010.

1208

D. Sharon Gentry, Robert A. Nance, Riggs Abney Neal Turpen Orbison Lewis, Oklahoma City, OK, David F. Barton, Elizabeth H. Connally, The Gardner Law Firm, San Antonio, TX, for Plaintiff.

## ***ORDER***

STEPHEN P. FRIOT, District Judge.

This order addresses defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Fed.R.Civ.P. (Doc. no. 23.)

Plaintiff is K–Mar Industries, Inc. Defendants are the United States Department of Defense and the United States Department of the Army. The complaint

alleges that plaintiff provides Training Support Center services and operates a Multimedia/Visual Information Service Center at Fort Still, Oklahoma. The complaint seeks declaratory and injunctive relief under 5 U.S.C. § 706(2) of the Administrative Procedures Act (APA), alleging that defendants violated insourcing procedures when they decided to insource, for performance by their own civilian employees, the Training Support Center portion of the work currently performed by plaintiff. These claims are sometimes referred to in this order as the procedures-based claims. Plaintiff also seeks production of records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(B), (E).

In support of their motion defendants argue that the Tucker Act as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b)(1), confers exclusive jurisdiction over plaintiff's procedures-based claims to the United States Court of Federal Claims (CFC). Defendants also contend that the Contract Disputes Act, 41 U.S.C. § 601 et seq., (CDA), confers exclusive jurisdiction on the CFC with respect to the procedures-based claims. Defendants contend that the FOIA claim should be dismissed because plaintiff has not exhausted its administrative remedies under that Act.

### Standards

Rule 12(b)(1) motions generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (internal citation omitted). In reviewing a facial attack, the district court must accept the allegations in the complaint as true. *Id.* Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Id.* at 1003. In reviewing a factual attack, a court has wide discretion to allow affidavits and other documents and to resolve any disputed jurisdictional facts. *Id.* In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion. *Id.*

For purposes of the motion, defendants assume, without admitting, the facts alleged in the complaint. (Doc. no. 23, p. 2, n. 1.) Defendants, therefore, appear to regard their motion as a facial attack on jurisdiction. Both parties, however, have submitted extraneous evidence for the court's consideration.[1] Typically, when matters outside the pleadings are considered, the motion is considered a factual attack on jurisdiction. As a practical matter, however, here it makes little difference whether the motion is considered as a facial or factual attack on jurisdiction. Whether the allegations are presumed true by the court, or whether the allegations are found to be true because they are verified and are expressly undisputed for purposes of the motion, the court's analysis begins by taking the allegations as true. The only difference in the two types of analysis concerns the court's reliance on extraneous evidence offered by the parties with their papers. This distinction is also of little importance here because neither party objects the court's consideration of this outside evidence.

---

1. For example, plaintiff's moving papers include a letter (in addition to the letter attached to the complaint) from the Department of the Army regarding plaintiff's FOIA request. Plaintiff also quotes from an interview with Secretary of Defense Robert Gates. Defendants do not object to the court's consideration of any outside evidence, and defendants have, themselves, submitted a brief filed in another action as an exhibit to their reply brief.

Accordingly, whether the motion is analyzed as a facial attack on jurisdiction with all extraneous evidence excluded from the court's consideration and with mentions of such evidence deleted from this order; or whether the motion is analyzed as a factual attack on jurisdiction, in which case the court finds that the allegations are undisputed for purposes of the motion and it considers the unchallenged, outside evidence that has been offered, the results stated in this order are the same.

### Jurisdiction over the Procedures-Based Claims

 Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). It is presumed that an action lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id.* Plaintiff has filed this action under the APA, and there is no dispute that 28 U.S.C. § 1331 provides subject matter jurisdiction over an APA challenge. In a suit against a federal agency, however, a plaintiff must satisfy an additional jurisdictional burden because the United States may not be sued without its consent. *Fostvedt v. United States*, 978 F.2d 1201, 1202 (10th Cir.1992), citations to United States Supreme Court authorities omitted. The existence of consent is a prerequisite for jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The United States consents to be sued only when Congress unequivocally expresses in its statutory text its intention to waive the United States' sovereign immunity. *Fent v. Oklahoma Water Resources Board*, 235 F.3d 553, 556 (10th Cir.2000).

The APA provides that in most circumstances an action in a court of the United States seeking relief other than money damages shall not be dismissed nor relief therein be denied on the ground that it is against the United States. *Normandy Apartments, Ltd. v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 1290, 1295 (10th Cir.2009), quoting the APA, 5 U.S.C. § 702.[2] The complaint in his action seeks declaratory and injunctive relief. It seeks no money damages. The court concludes that the complaint seeks relief other than money damages and comes within the United States' waiver of sovereign immunity as stated in the APA if the limitation stated in the APA regarding the reach of its waiver of immunity does not apply.

In that regard, the APA's waiver of sovereign immunity does not apply if any other statute that grants consent to suit, expressly or impliedly forbids the relief which is sought. *See*, last sentence of § 702 quoted *infra* at n. 2. Defendants argue that pursuant to this limitation, the ADRA ousts the district court's jurisdiction under the APA.

In 1996, Congress amended the Tucker Act by enacting the ADRA which added 28

---

**2.** Section 702 provides in pertinent part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.... The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."

U.S.C. § 1491(b) to the Tucker Act. *Colorado Dept. of Human Services v. United States,* 74 Fed.Cl. 339, 344 (Fed.Cl.2006). Section 1491(b)(1), sometimes described as expanding the CFC's jurisdiction to include both pre-award and post-award "bid protest" cases, *id.,* provides as follows.

> Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on *an action by an interested party objecting to* a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or *any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.* (Emphasis added for purposes of later discussion.)

Although this language would appear to provide concurrent jurisdiction to United States district courts and the CFC, the ADRA contains a sunset provision which provides as follows.

> The jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) of title 28, United States Code, shall terminate on January 1, 2001 unless extended by Congress. 28 U.S.C. § 1491, statutory notes at FN 1.

The sunset date was not extended by Congress. Accordingly, the ADRA provides for exclusive jurisdiction in the CFC if that Act applies, thereby depriving the plaintiff of the option to bring suit in the district court under the APA.

It is therefore necessary to determine whether the ADRA, by its terms, applies to this action. Tracking the language of the ADRA, the court finds that this is not an action by "an interested party" bringing an objection "to a solicitation by a Federal agency for bids or proposals for a proposed contract" or "to a proposed award" or to "the award of a contract." Holding

aside for the moment the question of whether plaintiff constitutes an interested party for purposes of the ADRA, the complaint simply does not allege an objection to a solicitation, or to a proposed award, or to the award of a contract. Rather, the complaint alleges an objection to a decision to insource, a decision which implicitly includes a decision *not* to procure and therefore *not* to solicit, award, contract or propose a contract.

As for the interested party requirement, the Federal Circuit has held that the definition of "interested party" for purposes of the ADRA is borrowed from 31 U.S.C. § 3551(2), included in the definitions of the Competition in Contracting Act (CICA). *American Federation of Government Employees, AFL–CIO v. United States,* 258 F.3d 1294, 1302 (Fed.Cir.2001). The CICA defines "interested party" as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of *the contract* or by failure to award *the contract.*" *Id.,* quoting the CICA (emphasis added). This definition strongly suggests that as a prerequisite to qualification as "an interested party" for purposes of the ADRA, a contract or a prospective contract must be in issue. Further supporting this conclusion is the fact that § 3551, by its terms, applies only to contract disputes. *Id.*

The ADRA also reaches "an action by an interested party objecting to ... any alleged violation of statute or regulation *in connection with* a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (see italicized text of § 1491(b)(1) quoted above, emphasis added). This is arguably the broadest coverage provision in the ADRA.

Even this provision, however, requires the objecting party to be an "interested party" within the meaning of the ADRA.

Moreover, for this provision to apply, a decision "in connection with a procurement or a proposed procurement" must be alleged. The Federal Circuit has held that the ADRA borrows the definition of "procurement" from 41 U.S.C. § 403(2), part of the Office of Federal Procurement Policy Act (OFFPA). *Distributed Solutions, Inc. v. United States,* 539 F.3d 1340, 1345 (Fed.Cir.2008). Title 41 U.S.C. § 403(2) defines "procurement" as including:

> all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout.

Defendants argue that this definition includes a decision to insource because "the process for determining a need for property or services" begins with a decision by the agency as to whether or not there is a need to acquire property or services. Although this is a reasoned argument, the court rejects it for several reasons.

For one thing, the portion of the § 403(2) definition that comes after the comma could have provided, but does not, that the process of acquiring services begins with the process of determining *"whether there is* a need" for property or services. Instead, the definition provides that the acquisition process begins with the process for determining *"a need* for property or services."

Also, it is arguable that the part of the definition that comes after the comma does not apply at all except to the extent that there is an on-going process of acquiring property or services as required by the part of the definition that precedes the comma.

Also, the portion of the definition that comes after the comma describes the acquisition process as "ending with contract completion and closeout." The definition says nothing about the possibility that the acquisition process might end with a decision not to acquire services or to insource.

Important, also, is the fact that 41 U.S.C. § 403(16) of the OFFPA defines "acquisition"—the critical concept within the definition of "procurement"—exclusively in terms of purchasing or leasing by contract. *See,* 41 U.S.C. § 403(16).

Finally, even if the ADRA's grant of jurisdiction arguably applies through defendants' proposed broad reading of the incorporated definition of procurement, this does not constitute a clear jurisdictional grant and waiver of immunity, rather, it is an implied one, and waivers of sovereign immunity are construed narrowly.[3]

These considerations, combined with the fact that this action only challenges the defendants' compliance with their own procedures regarding the decision to insource, cause the court to conclude that this action is not one "in connection with a procurement or a proposed procurement," the broadest of the potentially applicable phrases of the ADRA.

Alternatively, even if this action were "in connection with a procurement or a proposed procurement," that phrase only applies with respect to an action by an interested party objecting to "any alleged violation of statute or regulation" in connection with a procurement or a proposed procurement. Although this action cites the statutes and regulations pursuant to which the procedures plaintiff claims were violated were promulgated, the complaint

---

**3.** *See, American Federation of Government Employees, AFL–CIO,* 258 F.3d at 1301, referring to 28 U.S.C. § 1491(b) as a statute which provides the CFC with "jurisdiction over bid protest cases," *id.* at 1297, and as a statute which waives the United States' sovereign immunity and which should therefore be construed narrowly. *Id.* at 1301.

does not allege a violation of these statutes or regulations *per se.*

Based on the language of the ADRA and other statutes incorporated in the ADRA for definitional purposes, the court concludes that this action does not come within the exclusive jurisdiction of the CFC or the waiver of sovereign immunity provided by the ADRA.[4]

The above conclusion is consistent with the Tenth Circuit's statement in *Normandy* that only contract claims come within the "impliedly forbids" language of the APA.[5] *Normandy* states: "while the plain language of the Tucker and Little Tucker Acts does not distinguish between claims founded on contracts and those founded on the Constitution, statutes, or regulations, we—like other circuits—have limited the application of the 'impliedly forbids' exception to the APA waiver of sovereign immunity to contract claims." *Id.* at 1299, citations omitted. In *Normandy*, the Tenth Circuit held that even when a contractor alleged that the Department of Housing and Urban Development had not followed its own regulations when the agency made the decision to abate financial housing subsidies paid to plaintiff under a contract, and even when this regulations-based claim was alleged alongside a breach of contract claim over which the CFC had exclusive jurisdiction, the regulations-based claim was not a contract claim within the meaning of the Tucker Act. For this reason the Tenth Circuit held that the district court erred when it dismissed the regulations-based claim because it was proper to hear that claim in the district court under the waiver of immunity provided by the APA. *Id.* at 1299–1301.

*Normandy* explained as follows.

It is true, of course, that ... the regulatory violations that [the Plaintiff] asserts implicate is contractual relationship with [the agency] ... But this does not convert a claim asserting rights based on federal regulations into one which is, at its essence, a contract claim. When the source of rights asserted is constitutional, statutory, or regulatory in nature, the fact that resolution of the claim requires some reference to contract does not magically transform the action.. into one on the contract and deprive the court of jurisdiction it might otherwise have. Rather, litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government. Similarly, an order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims.

*Normandy,* at 1299–1300, citations and quotations omitted.

Thus, unless this action includes a contract claim, the Tenth Circuit would hold

---

4. This court agrees with dicta in another insourcing case, *Vero Technical Support, Inc. v. United States,* No. 10–575C. In an order in that case Judge Marian Blank Horn stated that "plaintiff's deliberate choice of forum in the District Court and chosen basis for jurisdiction, traditional APA jurisdiction, resonates with this court. Without a contract or solicitation at issue, even as amended by the ADRA, Tucker Act jurisdiction to challenge the insourcing policy decisions is not immediately apparent." (Doc. no. 28, ex. 2, order of September 29, 2010, p. 8.) Judge Horn went on to note, however, that her order did not address the propriety of the jurisdiction of the CFC and that she had not fully explored the issue.

5. The "expressly forbids" limitation (as contrasted with the "impliedly forbids" limitation) does not apply because the ADRA does not expressly preclude application of the APA waiver in this action. For example, the ADRA says nothing about exclusive jurisdiction in the CFC for actions alleging a violation of agency procedures, or for actions challenging agency decisions to insource.

that the ADRA cannot impliedly oust this court of its jurisdiction. *Normandy* provides the proper approach for categorizing a claim as a contract-based claim for this purpose. *Id.* at 1299. The classification depends on the source of the rights upon which plaintiff bases its claims, and upon the type of relief sought. *Id.*

Here, plaintiff challenges only the defendants' compliance with insourcing procedures. The complaint expressly rejects a breach of contract theory of liability, and plaintiff seeks no contractual relief. This is not a case of artful pleading to disguise the true nature of the action. Rather, plaintiff is master of its complaint and plaintiff has opted to pursue limited theories of liability and limited types of relief, none of which are contract-based.[6] Accordingly, the "impliedly forbids" exclusion to the APA's waiver of sovereign immunity cannot apply because no contract claim is alleged.

To the extent that defendants' arguments are based on congressional intent and the legislative history of the ADRA, or public policy arguably favoring the CFC's exclusive jurisdiction over contractual matters as well as disputes such as this one, such arguments cannot trump the actual language of the APA, or the Tucker Act as amended by the ADRA. Nor can defendants' policy arguments trump the fundamental judicial principle which requires the court to read narrowly any unclear waiver of immunity such as the one argued for here by the defendants under the ADRA.

Defendants' motion for dismissal based on the ADRA will be denied.

*The Contracts Dispute Act.*

■ The Contracts Dispute Act confers exclusive jurisdiction on the CFC for "[e]ach claim by a contractor against the government relating to a contract...." 41 U.S.C. § 605(a). The CDA bars district court jurisdiction if the court determines that plaintiff's claims against a government agency are essentially contractual in nature. *B & B Trucking, Inc. v. United States Postal Service,* 406 F.3d 766, 768 (6th Cir.2005), citation and quotations omitted. The classification of an action as one which is or is not essentially contractual for purposes of the CDA depends on both the source of the rights upon which plaintiff bases its claim, and upon the type of relief sought or appropriate. *Id.,* citation and quotations omitted. The plaintiff's title or characterization of its claims is not controlling. *Id.,* citation and quotations omitted. A plaintiff may not avoid the jurisdictional bar of the CDA in district court merely by alleging violations of regulatory or statutory provisions. *Id.,* citation and quotations omitted.

■ The relief sought in this action asks the court to hold the insourcing decision unlawful as a violation of the defendants' own insourcing procedures, and to set that decision aside. The source of the rights alleged in this action is not contractual, it is the procedures put in place by the defendants. Nor is the relief requested contractual in nature; no relief such as damages for breach of contract, or seeking specific performance, are sought. Rather, the complaint recognizes that whether or not the insourcing decision is enjoined,

---

**6.** It is entirely speculative as to whether there will ever be a future solicitation or a contract regarding the Training Support Center services. Even if plaintiff ultimately prevails and the court finds that defendants' insourcing procedures were violated, compliance with those procedures may result in the same decision, that is, a decision to insource rather than to outsource the services. If the services are outsourced, this action does not seek a determination that plaintiff should win that contract.

plaintiff's contract will terminate on schedule. (*See,* doc. no. 1, ¶ 62.)

The court concludes that this is not an action against the government relating to a contract within the meaning of the CDA. Defendants' motion for dismissal based on the CDA will be denied.

*The Freedom of Information Act Claim*

Defendants argue the FOIA claim should be dismissed because plaintiff has not exhausted its FOIA administrative remedies.

The FOIA, 5 U.S.C. § 552(a)(6)(C)(i), expressly deems administrative remedies to have been exhausted if the agency fails to comply with the applicable time limits stated in that paragraph of the Act. Nothing in the statute suggests that a FOIA claim should be dismissed for failure to exhaust administrative remedies in the circumstances presented here, which include the fact that plaintiff has filed a FOIA request; that plaintiff has received two letters in response, neither of which states a date for production; and that time limits provided for in the statute have expired. *See,* 5 U.S.C. § 552(a)(6)(A), (B) (stating time limits).

In contrast to the cases cited by defendants, here there are no issues regarding lack of notice to the government of plaintiff's FOIA request, or the sufficiency of plaintiff's FOIA request. Plaintiff has not taken a scattershot approach to its request and has not failed to appeal a denial despite notification of appeal rights. See cases cited by defendants including, *Roberts v. Paulson,* 263 Fed.Appx. 745, 747–48 (10th Cir.2008) (affirming dismissal where plaintiff did not allege he had complied with notice requirements of the FOIA); *Durham v. United States,* 2008 WL 5978929 at *2 (D.N.Mex.2008) (dismissal for lack of jurisdiction appropriate where complaint bore no indication that plaintiff pursued his FOIA request prior to filing complaint at all, as complaint appeared to be an original request and plaintiff had not brought the request to the attention of relevant agencies); and *Scherer v. United States Department of Education,* 78 Fed. Appx. 687, 690 (10th Cir.2003) (FOIA claim properly dismissed where plaintiff took a "scattershot approach" to his FOIA requests, including failure to pursue administrative appeal of initial denial even though he was notified of his appeal rights), unpublished.

■ Moreover, many of defendants' arguments concern the merits of their contention that delays have been justified rather than the propriety of dismissal for failure to exhaust remedies. This court may or may not ultimately be required to determine whether any delays have been justified, but even cases cited by defendants state that the government's due diligence may be an issue for the court. *See, e.g., Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 615–16 (D.C.Cir.1976) (courts have a role when the agency does not show due diligence in processing a plaintiff's request or is lax in meeting its obligations under the FOIA), superseded to some extent by statutory amendment not material here.

The motion to dismiss the FOIA claim for failure to exhaust administrative remedies will be denied.

*Ruling*

After careful consideration, defendants' motion to dismiss is **DENIED.**