[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14889

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 10, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:10-cv-14162-DLG

VERO TECHNICAL SUPPORT, INC.,
A Florida Corporation,

Plaintiff-Appellant,

versus

UNITED STATES DEPARTMENT OF DEFENSE,
UNITED STATES DEPARTMENT OF THE AIR FORCE,
UNITED STATES DEPARTMENT OF THE ARMY

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 10, 2011)

Before EDMONDSON and MARCUS, Circuit Judges, and FAWSETT,[*] District
Judge.

_____

[*]Honorable Patricia C. Fawsett, United States District Judge for the Middle District of
Florida, sitting by designation.

PER CURIAM:

Appellant Vero Technical Support, Inc. ("VTS") provided weather forecasting, weather observation, maintenance, and support services at eleven Army bases throughout the United States under a contract overseen by Appellee United States Department of the Air Force ("Air Force").[1] Prior to the expiration of this contract, VTS filed suit for declaratory and injunctive relief in the United States District Court for the Southern District of Florida, seeking to permanently enjoin and set aside the Appellees' decision to insource the scope of the work previously performed by VTS under the contract. VTS now appeals the district court's dismissal of its action for lack of subject matter jurisdiction. For the reasons set forth below, we affirm.

## I. Facts

In its complaint, VTS asserts that the Appellees' insourcing decision should be set aside as arbitrary and capricious because the Appellees failed to comply with the procedures they adopted pursuant to 10 U.S.C. §§ 129a and 2463 in reaching their decision. The district court dismissed VTS's complaint for lack of subject matter jurisdiction, finding that the allegations of VTS fall within the scope of the Tucker Act, 28 U.S.C. § 1491(b)(1), and therefore the Court of Federal Claims ("COFC") has

---

[1] The complaint alleges that although VTS performed the contract services at Army bases, "the military departments have joint cooperation agreements to share the work product, and for purposes of its work, VTS ultimately [was] directed by and answer[ed] to the Air Force."

2

exclusive jurisdiction to hear the dispute.[2]

Following the district court's dismissal, VTS filed a bid protest action in the COFC under 28 U.S.C. § 1491(b)(1), requesting declaratory and injunctive relief. The COFC dismissed VTS's complaint without prejudice, finding that 28 U.S.C. § 1500 precluded jurisdiction in the COFC while the time for appealing the district court's decision to the Eleventh Circuit was still pending.[3] Vero Technical Support, Inc. v. United States, 94 Fed. Cl. 784, 795-96 (2010). The present appeal followed. VTS now contends that the district court erred in dismissing the action for lack of subject matter jurisdiction because neither the Tucker Act nor the Contract Disputes Act ("CDA") expressly or impliedly forbids the relief sought by VTS in the district court.

## II. Standard of Review

We review de novo a district court's order granting a motion to dismiss for lack of subject matter jurisdiction and its interpretation and application of statutory provisions. Chaney v. Tenn. Valley Auth., 264 F.3d 1325, 1326 (11th Cir. 2001);

---

[2] The district court also discussed the COFC's exercise of exclusive jurisdiction under the CDA, 41 U.S.C. § 609(a)(1), but declined to make a finding that the CDA applied to the present dispute.

[3] The Southern District of Florida granted Appellees' motion to dismiss on August 17, 2010. VTS filed its complaint in the COFC on August 24, 2010, and the COFC dismissed the action on September 29, 2010. On October 15, 2010, VTS filed a Notice of Appeal in the Southern District of Florida.

Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1142 (11th Cir. 2009).

## III. Discussion

The Administrative Procedure Act ("APA") waives the sovereign immunity of the United States to the extent that it permits "[a] person suffering legal wrong because of agency action" to "seek[ ] relief other than money damages" in federal court. 5 U.S.C. § 702. The Act provides that a reviewing court shall, among other things, "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Id. § 706(2)(A). However, the Act also provides:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Id. § 702. Because both the Tucker Act and the CDA vest jurisdiction over certain disputes exclusively with the COFC, these statutes forbid relief that would otherwise be available under the APA, mainly the ability to resolve an APA claim that falls within the scope of the Tucker Act or the CDA in a federal district court. Accordingly, we must determine whether the allegations set forth in the complaint fall within the scope of either the Tucker Act or the CDA.

## A. The Tucker Act

The Administrative Dispute Resolution Act ("ADRA"), which amended the Tucker Act, "was enacted in 1996 in part to reorganize the jurisdiction of the federal courts over bid protests cases and other challenges to government contracts. Prior to the ADRA, the [COFC] and the federal district courts had enjoyed overlapping jurisdiction to hear these claims." Labat-Anderson, Inc. v. United States, 346 F. Supp. 2d 145, 149 (D.D.C. 2004). The ADRA streamlined this jurisdictional framework by creating "a transitional period during which the federal district courts and the [COFC] would enjoy concurrent jurisdiction over government contract cases." Id. at 150. Specifically, the ADRA amendment to the Tucker Act provides:

> Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1). The ADRA amendment also contains a sunset provision stating that the jurisdiction of the federal district courts over actions described in § 1491(b)(1) would expire on January 1, 2001, unless otherwise extended by

5

Congress. Congress did not extend the deadline. As the Federal Circuit has explained, "[i]t is clear that Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001). Accordingly, the COFC now enjoys exclusive jurisdiction over Tucker Act claims.

On appeal, VTS argues that its claims do not fall within the scope of Tucker Act jurisdiction because the claims do not involve: (1) a violation of statute or regulation (2) in connection with a procurement, alleged by (3) an interested party, as required by § 1491(b)(1). We discuss each of VTS's arguments in turn.

VTS first contends that § 1491(b)(1) does not apply to the present dispute because the complaint does not allege a violation of a statute or regulation. Specifically, VTS contends that although the complaint cites the statutes and regulations pursuant to which the allegedly violated procedures were promulgated, the complaint does not allege a violation of these statutes *per se*. Rather, VTS alleges a violation of the Department of Defense's ("DoD's") own procedures. Notwithstanding VTS's arguments to the contrary, the complaint specifically alleges that "[Appellees'] insourcing decision is not in accordance with the insourcing procedures required by 10 U.S.C. § 2463 which [Appellees] have bound themselves

6

to." Thus, the complaint alleges a violation of a statute or regulation.

VTS next argues that it does not seek to enjoin a "procurement" within the meaning of § 1491(b). Section 1491(b) provides that the COFC shall have jurisdiction over disputes relating to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). While the Tucker Act itself does not define the terms "procurement" or "proposed procurement," the Federal Circuit has adopted the definition of procurement provided in 41 U.S.C. § 403(2). Distributed Solutions, Inc. v. United States, 539 F.3d 1340, 1345 (Fed. Cir. 2008). Section 403(2) provides that "'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403(2). In light of this definition, the Federal Circuit has determined that the phrase "in connection with a procurement or a proposed procurement"

> involves a connection with any stage of the federal contracting acquisition process, including "the process for determining a need for property or services." To establish jurisdiction pursuant to this definition, the contractors must demonstrate that the government at least initiated a procurement, or initiated "the process for determining a need" for acquisition and assistance solutions for [the project at issue].

Distributed Solutions, 539 F.3d at 1346.

7

In the present case, VTS alleges that the Appellees' decision to insource the scope of the work previously performed by VTS was not rendered in accordance with the procedures the DoD adopted pursuant to 10 U.S.C. § 2463. Because the decision to insource a government contract involves the process of "determining a need for property or services," 41 U.S.C. § 403(2), that decision occurs "in connection with a procurement or a proposed procurement" under the Tucker Act.[4] 28 U.S.C. § 1491(b)(1); see RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) (finding "[t]he operative phrase 'in connection with'" to be "very sweeping in scope," and thus, "[a]s long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction"); Harris Enters., Inc. v. U.S. Dep't of Def., No. SA-10-CA-573-FB (W.D. Tex. Oct. 12, 2010) (unpublished) ("While insourcing in and of itself may not involve the procurement of goods or services, a decision whether or not to insource involves the process for determining a need for acquisition of property or services and, consequently, involves

---

[4] In support of its argument that the allegations in the present case do not involve a "procurement," VTS cites dicta from the COFC's decision in Vero, 94 Fed. Cl. 784. In Vero, the COFC stated that "plaintiff's deliberate choice of forum in the District Court and chosen basis for jurisdiction, traditional APA jurisdiction, resonates with this court. Without a contract or solicitation at issue, even as amended by the ADRA, Tucker Act jurisdiction to challenge the insourcing policy decision is not immediately apparent." 94 Fed. Cl. at 792. However, VTS fails to cite the next sentence in the opinion which provides: "[i]n this Order, however, the court does not address the propriety of jurisdiction in the Court of Federal Claims, and has not fully explored the issue at this time." Id. Thus the COFC's reflections on the application of Tucker Act jurisdiction in Vero are not controlling in the present case.

8

a 'procurement' or a 'proposed procurement' regardless of whether property or services are actually procured."  (citing Distributed Solutions, Inc., 539 F.3d at 1342)); Rothe Dev., Inc. v. U. S. Dep't of Def., No. SA-10-CV-743-XR, 2010 WL 4595824, at *4 (W.D. Tex. Nov. 3, 2010) ("A decision to insource is a decision not to acquire, not to enter a procurement process, and thus is necessarily a decision made 'in connection with a procurement or proposed procurement' as required under the terms of the Tucker Act."); but see K-Mar Indus., Inc. v. U.S. Dep't of Def., 752 F. Supp. 2d 1207, 1212 (W.D. Okla. 2010).

Finally, VTS argues that it is not an "interested party" within the meaning of the Tucker Act because the predicate for "interested party" status is a contract award process, which is necessarily absent from an insourcing process.  The Federal Circuit has applied to the Tucker Act the definition of "interested party" in the Competition in Contracting Act, 31 U.S.C. § 3551-56: "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  31 U.S.C. § 3551(2)(A); Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001).  Here, in an effort to establish Article III standing, the complaint asserts that

> [b]ut for their unlawful decision to insource VTS's work, [Appellees] would have to consider extending the option to VTS on the merits of VTS's current performance, or re-competing the contract.

9

The inability even to be considered for an option or even to compete for the work as a consequence of the legal wrong are injuries in fact, i.e. actual, concrete, and particularized injuries, to VTS.

Thus, the complaint expressly characterizes VTS as a prospective bidder with a direct economic interest in the Appellees' decision not to award a contract. Moreover, the complaint asserts that VTS "is injured under its contract by not having an option extended due to the insourcing." In light of these allegations, VTS is an "interested party" under the Tucker Act.

In sum, VTS is an interested party alleging that a federal agency violated a "statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b). Accordingly, VTS's challenge to the Appellees' insourcing decision falls within the scope of the Tucker Act and the exclusive jurisdiction of the COFC.

## B. The Contract Disputes Act

On appeal, the parties additionally dispute the proper application of the CDA to the present action. The Contract Disputes Act "is a comprehensive scheme for the resolution of '[a]ll claims by a contractor against the government relating to a contract.'" Lockheed Martin Corp. v. Def. Contract Audit Agency, 397 F. Supp. 2d 659, 664 (D. Md. 2005) (quoting 41 U.S.C. § 605(a)). The Tucker Act, in conjunction with the CDA "'purports to make the [COFC] the exclusive trial court

for hearing disputes over government contracts that fall under the CDA.'" Tex. Health Choice, L.C. v. Office of Personnel Mgmt., 400 F.3d 895, 899 (Fed. Cir. 2005) (quoting Quality Tooling, Inc. v. United States, 47 F.3d 1569, 1572-73 (Fed. Cir. 1995)).

In the present case, the district court declined to decide whether the allegations of the complaint fall within the scope of the CDA, leaving it to the COFC to determine if its jurisdiction was properly exercised under the CDA. The Appellees now argue that while the complaint presents typical CDA claims, this Court need not determine whether the CDA applies to the present action because a procurement is the source of the rights upon which VTS bases its claims and the relief sought is available under the Tucker Act. In response, VTS argues that, having no contractual rights to assert in the present matter, the allegations of the complaint relate solely to the Appellees' arbitrary insourcing decision.

The purpose of the CDA "is to ensure national uniformity in government contract law," Tex. Health, 400 F.3d at 899, a purpose that is furthered by permitting the COFC to determine the scope of the CDA and its application to insourcing challenges. Therefore, having affirmed the district court's findings regarding the Tucker Act, this Court need not reach the issue of whether the CDA also confers exclusive jurisdiction over this case to the COFC.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.