# United States Court of Appeals for the Federal Circuit

---

**SRA INTERNATIONAL, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**COMPUTER SCIENCES CORPORATION,**
*Defendant-Appellee.*

---

2014-5050

---

Appeal from the United States Court of Federal Claims in No. 1:13-CV-00969, Judge Susan G. Braden.

---

Decided: September 15, 2014

---

JEFFERY M. CHIOW, Rogers Joseph O'Donnell, P.C. of Washington, DC, argued for plaintiff-appellant. With him on the brief were ROBERT S. METZGER and OLIYA S. ZAMARAY. Of counsel was PATRICIA A. MEAGHER, of San Francisco, California. Of counsel on the brief was MICHAEL J. SCHAENGOLD, Patton Boggs LLP, of Washington, DC.

STEVEN M. MAGER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. On the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, DONALD E. KINNER, Assistant Director, and CHRISTOPHER J. CARNEY, Trial Attorney. Of counsel on the brief were MARIE COCHRAN, Assistant General Counsel, Personal Property Division, United States General Services Administration, of Washington, DC; and KATHRYN R. NORCROSS, Senior Counsel, DUNCAN N. STEVENS and ROBERT J. BROWN, Counsel, Federal Deposit Insurance Corporation, of Arlington, Virginia.

CARL J. PECKINPAUGH, Computer Sciences Corporation, of Falls Church, Virginia, argued for defendant-appellee Computer Sciences Corporation. With him on the brief was EVAN D. WESSER. Of counsel on the brief were PAUL F. KHOURY and SAMANTHA S. LEE, Wiley Rein LLP, of Washington, DC.

---

Before PROST, *Chief Judge,* NEWMAN and TARANTO, *Circuit Judges.*

PROST, *Chief Judge.*

SRA International, Inc. ("SRA") appeals the dismissal of its bid protest in which it alleged that the General Services Administration ("GSA") violated various laws by waiving an organizational conflict of interest ("OCI") after awarding a task order to Computer Sciences Corporation ("CSC") for services to be rendered to the Federal Deposit Insurance Corporation ("FDIC"). Although dismissing the case on other grounds, the United States Court of Federal Claims held that it had jurisdiction over the challenge to the validity of the OCI waiver under the Tucker Act, despite the Federal Acquisition Streamlining Act of 1994 ("FASA") bar on jurisdiction over protests "in connection

with the issuance or proposed issuance of a task or delivery order," 41 U.S.C. § 4106(f)(1) (2012). *SRA Int'l, Inc. v. United States*, No. 1:13-cv-00969, 2014 U.S. Claims LEXIS 16 (Fed. Cl. Jan. 13, 2014) ("*Order*"). Because the GSA executed the disputed OCI waiver in connection with the issuance of the task order, we vacate and remand with instructions to dismiss the case for lack of jurisdiction.

BACKGROUND

Appellant SRA provided network infrastructure support to the FDIC since 2009 under the GSA's Millennia Government-Wide Acquisition Contract ("GWAC"). *Order* at *1–2. SRA provided these services pursuant to a task order referred to as ISC-2. *Id.* at *2. While SRA had worked under ISC-2, Blue Canopy Group, LLC ("Blue Canopy") conducted security audits for the FDIC of SRA's network security. *Id.* at *3.

In June 2012, the GSA issued a Task Order Request pursuant to the Alliant GWAC, which superseded the Millennia GWAC. *Id.* at *2. Though the services were to be provided to the FDIC, the GSA procured the task order. *See* J.A. 180. In October 2012, the GSA awarded a task order to appellee CSC. *Order* at *2. SRA protested the award to the Government Accountability Office ("GAO"), and the GSA terminated the task order for convenience. *Id.* The GSA then reissued the Task Order Request with certain corrective amendments, and, on August 14, 2013, the GSA again awarded a task order to CSC—referred to as ISC-3—for more than $365 million. *Id.* at *3.

SRA filed a second protest to the GAO for the award of ISC-3 on August 26, 2013, alleging that there were two OCIs based on CSC's intended use of Blue Canopy as a subcontractor: "impaired objectivity"; and "unequal access to information." *Id.* SRA alleged that Blue Canopy's work with the FDIC gave Blue Canopy "access to SRA's proprietary information" and knowledge of "how the FDIC

evaluated SRA's work," which SRA argued led to the alleged OCIs. *Id.*

In light of the OCI allegations, the GSA informed the GAO that CSC agreed to drop Blue Canopy as a subcontractor under ISC-3. *Id.* at *4; J.A. 178. SRA conceded that this cured any alleged "impaired objectivity" OCI, but insisted that the GAO continue the protest under the "unequal access to information" OCI. *Order* at *4. SRA maintained that CSC and Blue Canopy violated FDIC regulations (as specifically referenced in Sections H.9.1 and K of the revised Task Order Request) by submitting false certifications, prior to being awarded ISC-3, that no OCIs existed. *See* Appellant's Br. 5; J.A. 194–95, 199–200; *Order* at *4; 12 C.F.R. §§ 366.12(e)(2), 366.14 (2014).

On November 25, 2013, the GSA issued a waiver under Federal Acquisition Regulation ("FAR") 9.503 of the remaining alleged OCI. *Order* at *4; J.A. 174–83. The GSA found the possibility of an OCI to be "exceedingly remote and unsubstantiated," but opted to waive any that may exist. J.A. 174. The GAO then dismissed SRA's protest as "academic." J.A. 481.

On December 9, 2013, SRA filed a post-award bid protest at the Court of Federal Claims seeking declarations that the OCI waiver is void for failing to satisfy FDIC law and regulations and for failure to set forth the extent of the OCI. J.A. 197–201. SRA also sought a permanent injunction preventing award of ISC-3 to CSC due to the alleged false certifications and argues that any task order issued to CSC "is void *ab initio*, illegal and a nullity." J.A. 200–01. SRA further sought a declaration that, because the GSA could have awarded SRA the task order, it was "arbitrary, capricious and unreasonable to make an illegal award to an invalid offeror" (i.e., CSC). J.A. 201.

The Government moved to dismiss for lack of jurisdiction under FASA because the contract at issue is a task order. *Order* at *7, *9. In pertinent part, FASA provides:

(1) Protest not authorized.—A protest is not authorized *in connection with the issuance or proposed issuance of a task or delivery order* except for—

. . . .

(B) a protest of an order valued in excess of $10,000,000.

(2) Jurisdiction over protests.—. . . [T]he Comptroller General shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

41 U.S.C. § 4106(f) (emphasis added).

SRA asserted that the court had jurisdiction to decide the validity of the OCI waiver under the "third prong" of Tucker Act jurisdiction and argued that FASA did not apply because the protest was not "in connection with the issuance or proposed issuance" of ISC-3. *Order* at *15–17. The Tucker Act provides the court with jurisdiction:

to render judgment on an action by an interested party objecting [(i)] to a solicitation by a Federal agency for bids or proposals for a proposed contract or [(ii)] to a proposed award or the award of a contract or [(iii)] *any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.*

28 U.S.C. § 1491(b)(1) (2012) (emphasis added).

The Court of Federal Claims denied the Government's motion, holding it had jurisdiction to decide SRA's claims concerning the validity of the waiver.[1] *Order* at *28.

---

[1]    The Court of Federal Claims explained during a conference with the parties that it considered its jurisdiction was limited to the issue of "whether the waiver was

Important to its decision was the "fact that the Waiver was issued well after the award"—here, 102 days later. *Id.* at \*24–25. Also important was the notion that waiver under FAR 9.503 "is a matter left to agency discretion." *Id.* at \*25. Thus, according to the court, "not only [was] the Waiver in this case discretionary, it [was] also distinct—in both a temporal and causal sense—from the ISC-3 Task Order." *Id.* at \*26. The court then sought a GAO advisory opinion to determine "whether the Waiver violated APA standards and, if so, to adjudicate the merits of the August 26, 2013 protest." *Id.* at \*28–29; 4 C.F.R. § 21.11(b) (2014).

The GAO issued an advisory opinion, determining that the waiver was not arbitrary or capricious. It further stated that, had the GSA not issued the waiver, the GAO "would have found the issue untimely and not considered the merits" because SRA was purportedly aware that Blue Canopy would be a CSC subcontractor by November 2012, during SRA's first protest. J.A. 5–7. The Government then moved to dismiss the case, which the Court of Federal Claims granted, stating that, "[i]n light of the GAO's January 31, 2014 response, . . . SRA's remaining claims are moot." J.A. 3. The court accordingly entered final judgment for the Government. J.A. 1. SRA appealed and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(3) (2012).

## DISCUSSION

We review decisions of the Court of Federal Claims on the scope of its jurisdiction without deference. *See Blueport Co. v. United States*, 533 F.3d 1374, 1378 (Fed. Cir. 2008). We also review questions of statutory and regula-

---

improper." J.A. 369; *see also* J.A. 380 ("[J]urisdiction here is pretty limited.").

tory construction without deference. *See Billings v. United States*, 322 F.3d 1328, 1332 (Fed. Cir. 2003).

The issue here is whether SRA's protest of the GSA's act of issuing the OCI waiver falls under the FASA bar. For purposes of the present case, we simply accept the parties' characterization of this issue as jurisdictional. SRA argues that jurisdiction under the Tucker Act's "third prong" for any "alleged violation of statute or regulation in connection with a procurement" is broad, while the FASA bar on protests "in connection with the issuance" of a task order is a narrow exception. *See* Appellant's Br. 25. SRA asserts that FASA does not cover protests "[w]here the alleged violation concerns acts that are temporally separated, or represent independent exercises of agency discretion distinct from issuance or proposed issuance" of the task order. *Id.* at 27.

SRA relies largely on *Distributed Solutions v. United States*, 539 F.3d 1340 (Fed. Cir. 2008). There, the agency had tasked a contractor under an existing task order with "selecting the vendors who would provide the software for the relevant [additional] functions." *Id.* at 1343. We held that the protestor's objection to the agency's decision to forgo normal competition requirements alleged a violation of law "in connection with a procurement or proposed procurement" (under the Tucker Act's third prong). *Id.* at 1345–46. We did not discuss FASA in the opinion.

Appellees argue that the GSA executed the OCI waiver "in connection with the issuance" of ISC-3 because every allegation in SRA's complaint is connected to issuance of the task order. *See* Gov't's Br. 22. Appellees assert that the most convincing evidence that the FASA bar applies is the remedy SRA sought—namely, "SRA actually sought to have the trial court set-aside a task order award to CSC." *Id.* at 16; *see, e.g., id.* at 24–25. Appellees also argue that the timing and discretionary

nature of the waiver are irrelevant under the plain language of FASA. *See id.* at 30–34; CSC's Br. 19, 24–25.

We hold that the Court of Federal Claims erred in exercising jurisdiction over SRA's claims because SRA's protest of the OCI waiver is "in connection with the issuance" of ISC-3. The statutory language of FASA is clear and gives the court no room to exercise jurisdiction over claims made "in connection with the issuance or proposed issuance of a task or delivery order." Even if the protestor points to an alleged violation of statute or regulation, as SRA does here, the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order. We acknowledge that this statute is somewhat unusual in that it effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct. Yet Congress's intent to ban protests on the issuance of task orders is clear from FASA's unambiguous language.

Additionally, we note that Congress has enacted multiple amendments to FASA that indicate Congress's reaffirmed intent to bar protests on the issuance of task orders. In 2008, Congress amended FASA to give the GAO exclusive jurisdiction for protests to the issuance of task orders exceeding $10 million, which would expire in 2011. *See* National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110–181, § 843, 122 Stat. 3, 239. In 2011, Congress amended this sunset provision for GAO jurisdiction to extend through 2016. *See* National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112–81, § 813, 125 Stat. 1298, 1491 (2011). In each instance, Congress left the general ban on protesting the issuance of task orders undisturbed.

Here, neither the discretionary nature of the OCI waiver nor the temporal disconnect between it and the

issuance of ISC-3 removes it from FASA's purview. First, nothing in FASA's plain language carves out an exception for discretionary agency actions. And the process of issuing a task order undoubtedly includes many discretionary decisions on the part of the agency.

Second, nothing in FASA's language automatically exempts actions that are temporally disconnected from the issuance of a task order. And here, the OCI waiver was directly and causally connected to issuance of ISC-3, despite being executed after issuance. The GSA issued the waiver in order to go forward with CSC on ISC-3. The only reason for the delay appears to have been due to the fact that the GSA was not aware of the OCI allegations earlier. *See* J.A. 177–78. The GSA could have executed a waiver prior to awarding ISC-3, so the timing is inconsequential. Even SRA acknowledges that, had GSA waived the alleged OCI prior to issuance, FASA would have barred its protest. *See* Oral Arg. 10:05–11:10 *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2014-5050/all. Thus, although a temporal disconnect may, in some circumstances, help to support the non-application of the FASA bar, it does not help SRA here. *See Global Computer Enters. v. United States*, 88 Fed. Cl. 350, 410, 412 (2009) (exercising jurisdiction over post-award modification to issued task order); *cf. generally Distributed Solutions*, 539 F.3d at 1342–46.

Further demonstrating the connection between the waiver and issuance of ISC-3 is the relief SRA seeks—i.e., rescission of the task order's issuance. Though not necessarily dispositive, we agree that it supports the conclusion that SRA's protest is actually with the issuance of the task order, rather than the waiver alone. *See Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 178–79 (2012) (declining jurisdiction over decision to partially re-compete issued task orders, noting "[p]articularly telling [was] the relief sought"); *Unisys Corp. v. United States*, 90 Fed. Cl. 510, 517, 520 (2009)

(exercising jurisdiction over decision to override automatic statutory stay where relief sought was instituting stay).

Each of SRA's allegations attacks the waiver or some consequential effect of the waiver. *See* Appellant's Br. 29–32; J.A. 196–201. Because we hold SRA's protest of the waiver was "in connection with the issuance" of ISC-3, the Court of Federal Claims had no jurisdiction to hear any of the counts alleged in SRA's complaint. The arguments concerning the GAO advisory opinion and the court's dismissal order are therefore moot.

Accordingly, we vacate the order on jurisdiction and remand with instructions to dismiss the case for lack of jurisdiction.

**VACATED AND REMANDED**