# In the United States Court of Federal Claims

No. 22-698

(Issued Under Seal: March 28, 2025)[1]

Reissued: April 15, 2025

|  |  |
|---|---|
| SIEMENS GOVERNMENT TECHNOLOGIES, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

*Michael Bhargava*, Nichols Liu LLP, Washington, D.C., for plaintiff. Also represented by Robert Nichols.

*Reta E. Bezak*, U.S. Department of Justice, Civil Division, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

***SMITH*, Senior Judge**

Today's dismissal motion—raised by defendant, the United States of America, against plaintiff, Siemens Government Technologies, Inc. ("Siemens")—is essentially a dispute over the definitional context in the Federal Acquisition Streamlining Act ("FASA") jurisdictional task order bar, 10 U.S.C. § 3406(f).[2] *See generally* Defendant's Motion to Dismiss, ECF No. 25 [hereinafter Def.'s Mot.]. In context, are Siemens' claims "to recover its bid preparation costs that it incurred" in pursuing the

---

[1] This opinion was issued under seal on March 28, 2025. The parties were given an opportunity to propose redactions before public release, but no proposals were made.

[2] This section applies to contracts made with the armed forces; however, a civilian task order bar, under 41 U.S.C. § 4106(f), also exists, whose language is identical to 10 U.S.C. § 3406(f). *Percipient.ai, Inc. v. United States, CACI, Inc.-Fed.*, 104 F.4th 839, 846 n. 2 (Fed. Cir.) ("There is a FASA task order bar that applies to public contracts generally, 41 U.S.C. § 4106(f)(1), and one that applies to the Department of Defense in particular, 10 U.S.C. § 3406(f)(1). *The text of the two provisions is similar*, except for the different monetary thresholds over which task order protests may be heard by the Comptroller General." (emphasis added and citations in original)), *reh'g en banc granted, opinion vacated sub nom. on other grounds, Percipient.ai, Inc. v. United States*, 121 F.4th 1311 (Fed. Cir. 2024). Accordingly, given the identical operative language and purpose of each task order bar, the Court treats each's caselaw as concomitantly informative on the meaning and statutory purpose of § 3406(f).

United States Department of the Navy's Solicitation No. N39430-14-F-EURAFSWA (the "Solicitation"), *see* First Amended Complaint at 1, ECF No. 20 [hereinafter Compl.], made "in connection with the issuance or proposed issuance of a task or delivery order," 10 U.S.C. § 3406(f)? If the task order bar applies, dismissal is "required." *Computer World Servs. Corp. v. United States*, 173 Fed. Cl. 582, 586 (2024). Otherwise, the case proceeds, sans some additional reason requiring dismissal.

The Court holds that FASA's bar is inapplicable because FASA's two requirements are ***not*** satisfied. First, the U.S. Navy did not (nor could it) issue or propose to issue the Solicitation. Second, this protest is not connected to the Solicitation because Siemens neither seeks to set aside nor generally interfere with the Solicitation. With neither FASA element satisfied, Siemens' lawsuit is therefore jurisdictionally proper under this case's rare facts and must be allowed to proceed.

# I

On June 21, 2022, Siemens filed its original complaint against defendant, seeking recovery of its bid preparation costs incurred in pursing the Solicitation. *See generally* Complaint, ECF No 1. But Siemens quickly moved unopposed on July 5, 2022, to stay the proceedings until a parallel appeal of an Armed Services Board of Contract Appeals (the "Board") decision was resolved by the United States Court of Appeals for the Federal Circuit. *See generally* Plaintiff's Unopposed Motion to Stay Proceedings, ECF No 8. On July 8, 2022, the Court stayed the proceedings. *See generally* Order Staying Case, ECF No. 11.

On May 29, 2024, Siemens informed the Court that the Federal Circuit had denied Siemens' parallel appeal. *See generally* Joint Status Report, ECF No. 17 (citing *Siemens Gov't Techs., Inc., v. Sec'y of the Navy*, No. 2022-2240, 2024 WL 2043201 (Fed. Cir. May 8, 2024)). Accordingly, "Siemens now intends to pursue a claim or claims before this Court." *Id.* at 1. On June 6, 2024, the Court lifted the stay. *See generally* Status Conference Order, ECF No. 18. After a status conference on June 14, 2024, the Court adopted an amended complaint and motion to dismiss briefing schedule until September 2024. *See generally* Order Lifting Stay and Scheduling Order, ECF No. 19. On June 24, 2024, Siemens filed their Amended Complaint, alleging that the U.S. "Navy's mishandling of the [Solicitation], culminating in its refusal to reimburse Siemens for its wasted proposal costs, was arbitrary and capricious, constituted an abuse of discretion and otherwise was not in accordance with" the U.S. Navy's statutory obligations. Compl. at 2. And like in its original complaint, Siemens seeks "to recover its bid preparation costs that it incurred" in pursuing the Solicitation. *Id.* at 1. Broken down, Siemens' claim arises from four key events.

**Event One**: **Siemens Becomes the Provisional Solicitation Awardee.** On September 19, 2014, pursuant to an October 2007 United States Department of Energy Indefinite Delivery, Indefinite Quantity ("IDIQ") Energy Saving Performance Contract, the U.S. Navy solicited a preliminary assessment of the "merits, technical feasibility,

level of projected energy savings, economics, and price" to "install energy conservation measures at six overseas [U.S. Navy] bases." *Id.* at 1, 6. Those bases are:

- Naval Air Station Sigonella, Italy ("Sigonella");

- Naval Station Rota, Spain ("Rota");

- Naval Support Activity Naples, Italy ("Naples");

- Naval Support Activity Bahrain ("Bahrain");

- Naval Support Activity Souda Bay ("Souda Bay"); and

- Camp Lemonnier, Djibouti ("Camp Lemonnier").

*Id.* at 6. Between 2014 and 2015, the U.S. Navy and Siemens held multiple discussions with the U.S. Navy to repeatedly revise proposals on the U.S. Navy's needs at the bases. *Id.* at 6–7. Eventually, on December 1, 2015, the U.S. Navy tentatively awarded the contract to Siemens, including all six components. *Id.* at 8. The U.S. Navy directed Siemens to conduct energy conservation audits at Souda Bay and at Camp Lemonnier on December 2, 2015, and on March 8, 2016, respectively. *Id.* at 8–9.

**Event Two: Siemens Is Informed of Duplicative Projects at Souda Bay.** On February 5, 2016, Siemens arrived at Souda Bay to begin its audit process—and made a shocking discovery. *Id.* at 9. "During its first few weeks at the facility, Siemens discovered that the [U.S.] Navy had already commissioned energy conservation measures at Souda Bay that duplicated and directly undermined the scope of work for the projects that the [U.S.] Navy had directed Siemens to undertake." *Id.* Siemens was not aware of the U.S. Navy's parallel procurement of Souda Bay energy conservation efforts. *Id.* Nevertheless, the U.S. Navy, by requiring years of planning and by receiving Congressional appropriations for such efforts, was allegedly aware of "these duplicative procurement[s] at Souda Bay before it asked Siemens to conduct a preliminary assessment." *Id.* Siemens later discovered duplicative energy conservation projects at Sigonella, Naples, and Rota as well. *Id.* at 10. On February 19, 2016, Siemens informed the U.S. Navy of its discoveries and requested an investigation into the matter. *Id.* at 9–10.

**Event Three: Siemens Is Informed of Duplicative Projects at Camp Lemonnier.** On May 13, 2016, Siemens arrived at Camp Lemonnier to being its audit process—and once again discovered the existence of a duplicate project. *Id.* at 11. "During the first few days of [Siemens'] site visit, [it] observed that significant construction had occurred at Camp Lemonnier since the [U.S.] Navy issued its" Solicitation. *Id.* Like at Souda Bay, a parallel procurement had been issued to a different contractor prior to Siemens' award. Siemens alleges that U.S. Navy officials discussed the existence of the duplicate contract in email communications in the months prior to Siemens arriving at Camp Lemonnier. *Id.* at 10–11. Between March 18, 2016,

and March 25, 2016, U.S. Navy officials "acknowledge[d] that Siemens was unaware of [the Camp Lemonnier's] duplicative effort and that Siemens would be harmed if the [U.S.] Navy continued to withhold this information." *Id.* at 10. Particularly, U.S. Navy Commander, Darren Hale, "expressed 'concern about our partnership with Siemens on the other $150M+ in contracts in Europe' if 'there is a negative financial impact on Siemens' on the Camp Lemonnier project"; and because of this risk, Commander Hale informed U.S. Navy Contracting Officer, Bryson Jo, that U.S. Navy Commander Micheal Oesterreicher was "ready to call the Expeditionary Warfare Center (the [U.S.] Navy entity that issued the Solicitation)." *Id.* Officer Jo, nonetheless, dissuaded Commanders Hale and Oesterreicher from contacting the Expeditionary Warfare Center because "the U.S. Navy would not be liable to reimburse them for their efforts" at Camp Lemonnier. *Id.* at 11. The U.S. Navy heeded Officer Jo's advice; Siemens was not informed. *Id.* On May 3, 2016, Siemens informed the U.S. Navy about its discovery at Camp Lemonnier. *Id.* at 12.

**Event Four: The U.S. Navy Cancels Siemens' Souda Bay and Camp Lemonnier Provisional Solicitation Awards.** On April 13, 2016, Siemens sent a letter to the U.S. Navy, concerned that the U.S. Navy "had withheld . . . information and, to that date, still ha[s] not formally acknowledge[d] or resolved the [duplicative procurements] issue, [despite the fact that] Siemens had alerted the [U.S.] Navy of the problem at Souda Bay as early as February 19, 2016." *Id.* For two months, from May 2016 until June 2016, Siemens continually raised similar concerns with the U.S. Navy, arguing that both the Camp Lemonnier and the Souda Bay energy conservation projects were likely no longer economically viable. *Id.* 12–13.

Acknowledging these "frustrat[ing]" issues, the U.S. Navy decided to undergo a viability analysis of Siemens' Souda Bay contract. *Id.* at 14–15. On September 14, 2016, the U.S. Navy completed this analysis and determined that the project should "not 'continue to final proposal.'" *Id.* at 15. On April 7, 2017, the U.S. Navy canceled Siemens' Souda Bay energy conservation planning. *Id.* On March 8, 2019, after determining that Siemens' Camp Lemonnier energy conservation efforts were also not viable, the U.S. Navy canceled Siemens' Camp Lemonnier planning as well. *Id.* at 16. Nonetheless, on September 26, 2018, the U.S. Navy still awarded Siemens the Sigonella, Rota, and Naples energy conservation contracts. *Id.* at 17.

Due to the U.S. Navy cancelling the Souda Bay and Camp Lemonnier procurements, Siemens lost a total of $5,182,641.97 in bid preparation costs. *Id.* at 17–18. Siemens then sued the U.S. Navy in this Court to recoup these costs. *See generally id.*; Complaint, ECF No 1.

On September 26, 2024, defendant filed its motion to dismiss arguing, first, that FASA's task order bar applied and, second, that regardless of FASA's application, most of Siemens' claims are barred by collateral estoppel. *See generally* Def.'s Mot. On October 24, 2024, Siemens responded in opposition to defendant's motion to dismiss. *See generally* Siemens' Response in Opposition to the Motion to Dismiss, ECF No. 29 [hereinafter Pl.'s Resp.]. On November 7, 2024, defendant replied in support of its

motion to dismiss. *See generally* Defendant's Reply in Support of its Motion to Dismiss, ECF No. 30 [hereinafter Def.'s Reply]. On November 20, 2024, the Court held oral argument on the motion to dismiss. On March 22, 2025, the Court denied defendant's motion to dismiss and promised a memorandum opinion to follow. *See generally* Order denying Defendant's Motion to Dismiss, ECF No. 34.

## II

Being its jurisdictional backbone, the Tucker Act (along with its sister statutes) allows the Court to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an expressed or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1491(a)(1), including government solicitation protests, 28 U.S.C. § 1491(b)(1); *e.g.*, *Computer World Servs. Corp.*, 173 Fed. Cl. at 585.

FASA limits the Tucker Act's jurisdictional grant by preventing causes-of-action made "in connection with the issuance or proposed issuance of a task or delivery order." 10 U.S.C. § 3406(f). If a cause-of-action "contravenes FASA, then it must be dismissed for lack of subject-matter jurisdiction" under Rule 12(h)(3) of the Rules of the Court of Federal Claims. *Computer World Servs. Corp.*, 173 Fed. Cl. at 585 (citing *Percipient.ai, Inc. v. United States*, 104 F.4th 839, 847 (Fed. Cir.), *reh'g en banc granted, opinion vacated on other grounds*, 121 F.4th 1311 (Fed. Cir. 2024) (denying rehearing on FASA's jurisdictional bar)).

When considering defendant's motion to dismiss for lack of subject-matter jurisdiction, the Court must take the facts alleged in Siemens' complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (*per curiam*). But if a motion to dismiss challenges the jurisdictional facts, the Court can look beyond the complaint itself, *see Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999), for "allegations alone are insufficient to meet the [plaintiff's] burden" of properly invoking the Court's subject-matter jurisdiction, *see Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

## III

Defendant moves to dismiss on two grounds. First, FASA's jurisdictional bar blocks Siemens' claims because the Solicitation was a task order. Def.'s Mot. at 14–15. Second, irrespective of FASA's applicability, Siemens' claims are collaterally estopped because, as sought here, Siemens' request to be reimbursed for its proposal preparation costs was already denied in the parallel appeal of the Board's decision. *Id.* at 14–15. Both arguments fail.

## A

The Court starts with the statutory text. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461 (2002) ("Our role is to interpret the language of the statute enacted by Congress."). 10 U.S.C. § 3406(f) disallows any "protest . . . in connection with the issuance or proposed issuance of a task or delivery order." This statutory language is "clear," *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014), and therefore interpreted unambiguously, *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[A] statute [means] what it says."), meaning *"any claim"* associated with an issued or proposed task order "is beyond our subject-matter jurisdiction," *Computer World Servs. Corp.*, 173 Fed. Cl. at 585 (emphasis in original). Ironically, this clarity can invite confusion.

Defendant believes that FASA's analysis is simplistic: The Solicitation is labeled 'task order' and so FASA's jurisdiction bar mandates dismissal, seemingly saying 'key-in 'ctrl+f' to find similar wording in a document and, if it is there, case closed.' *See* Def.'s Mot. at 9–14; *see also Percipient.ai, Inc.*, 104 F.4th at 849 ("[T]he Government reads the statute as if it broadly bars all protests made in connection with a task order . . . rather than just those protests made in connection with the *issuance or proposed issuance of* a task order." (internal quotation marks omitted and emphasis in original)). Often, the analysis can be straightforward. *E.g.*, *Computer World Servs. Corp.*, 173 Fed. Cl. at 585; *Prime Physicians, PLLC v. United States*, 174 Fed. Cl. 190, 196 (2024) (barring a protest because it "turn[ed] on the lawfulness of the language of a task order.").

Often is not always. *E.g.*, *Mlinqs, LLC v. United States*, No. 22-1351, 2023 WL 2366654, at *14–16 (Fed. Cl. Mar. 6, 2023) (holding that temporally disconnected protests on a procurement originating as a routine solicitation and was converted into a task order is not jurisdictionally barred). Sometimes, like here, applying FASA's jurisdictional bar is factually complex under its two-element test which only prevents lawsuits "in connection with" a proposed or issued task order—which means that two elements must be established. 10 U.S.C. § 3406(f); *see also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 683 (2020) (Courts are "not free to overlook plain statutory commands.").

*First*, a proposed or issued task order must exist to be protested. But does the FASA bar apply when an agency solicits redundant proposals from potential bidders? As alleged, the U.S. Navy knew or should have been aware—***from the beginning***—that it had previously awarded a contract to another corporation for the same services sought at six overseas bases. Compl. at 5. If the U.S. Navy's need is fictional, the agency would have violated its requirements "to act in good faith and use reasonable care in computing its estimated needs." *Medart, Inc. v. Austin*, 967 F.2d 579, 581 (Fed. Cir. 1992); *see Rumsfeld v. Applied Companies, Inc.*, 325 F.3d 1328, 1334–35 (Fed. Cir. 2003) (reaffirming *Medart, Inc.*). Without a "'realistic'" need, *Fed. Grp., Inc. v. United States*, 67 Fed. Cl. 87, 97 (2005) (citing 48 C.F.R. § 16.503), the Agency's solicitation was illegitimate—meaning it cannot propose (read as "something offered for . . .

acceptance") a need that is already fulfilled—and, thus, the U.S. Navy could neither have awarded a contract to Siemens nor could Siemens have accepted that award. *Proposal*, BLACK'S LAW DICTIONARY (11th ed. 2019); *e.g.*, Compl. at 13–17 (alleging that the U.S. Navy was internally aware that the Camp Lemonier and Souda Bay contract components were already awarded to a party other than Siemens). In this unique context, FASA's bar is inapplicable because the task order was void from the start.

*Second*, the protest must be predicated upon the proposed or issued task order. Caselaw instructs that FASA's jurisdictional bar is linked to the form of relief being requested. *Cf., e.g.*, *Computer World Servs. Corp.*, 173 Fed. Cl. at 586. While not "dispositive," relief sought can inform the purpose of Siemens' claims. *SRA Int'l, Inc.*, 766 F.3d at 1414. Had Siemens, like *Computer World*, sought relief to either rescind the non-redundant task order or block award of a task order, its lawsuit would "[o]bviously" be in connection with a task order. 173 Fed. Cl. at 586. But Siemens did not request this relief. Instead, Siemens only seeks to be reimbursed after the government, in violation of statutory obligations, allegedly mislead Siemens about its needs, *see* Compl. 18–24, making this case closer to *Percipient.ai*, where the Federal Circuit found that the claim and the relief sought—that being, whether an agency's statutory misinterpretation of task order obligations harmed Percipient.ai—"did 'not assert the wrongfulness of, or seek to set aside, any task order' or an agency's corrective action of a task order that was issued or pending," *Computer World Servs. Corp.*, 173 Fed. Cl. at 586 (quoting *Percipient.ai, Inc.*, 104 F.4th at 846–47). Siemens has never sought to set aside or generally interfere with any pending or issued task order; it only wishes to be made whole after being led astray by the U.S. Navy's false procurement needs—a claim FASA does not bar.

Neither element, as applied to this case's rare factual allegations, is satisfied. Siemens' lawsuit is therefore jurisdictionally proper under the parameters discussed more thoroughly below.

**1**

An agency must have "issued or proposed [the] issuance of a task . . . order" for the jurisdictional bar to apply. 10 U.S.C. § 3406(f). This requirement is so obvious that it has been rarely remarked upon. *E.g.*, *Mori Assocs., Inc. v. United States*, 113 Fed. Cl. 33, 37 (2013) (illustrating the importance of element one); *see also, e.g.*, *Percipient.ai, Inc.*, 104 F.4th at 849 (noting that the FASA bar only applies if there is an "*issuance or proposed issuance of a task* order." (emphasis in original)). Still, the requirement is nonetheless crucial—for if no task order has either been awarded or proffered by an agency, then the FASA bar is inapplicable. *22nd Century Techs., Inc. v. United States*, 57 F.4th 993, 999 (Fed. Cir. 2023) (rooting "FASA's unambiguous language" as barring claims *only* made against task or delivery orders).

Siemens is only seeking recovery of bid preparation costs relating to two "canceled Sonda Bay and Camp Lemonnier components of this procurement," Compl. at

17, as opposed to seeking costs arising from the awarded, *i.e.*, 'issued,' Sigonella, Rota, and Naples camp components,[3] *id.* at 18–24. The only dispute, then, is whether the Solicitation's Sonda Bay and Camp Lemonnier components were properly "proposed" by the U.S. Navy. 10 U.S.C. § 3406(f); *compare* Def.'s Reply at 5, *with* Pl.'s Resp. at 8–10.

FASA neither defines 'proposed issuance,' *see* 10 U.S.C. § 3401, nor seemingly has the Federal Circuit defined the phrase. The Court therefore relies upon statutory interpretation principles instead.

Statutory application is "more than [its] separate words, as a melody is more than [its] notes." *Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934) (Hand, J.). A word or phrase's placement in a sentence determines the statutory command, for linguistic structure guides how text is to be enforced. *Gundy v. United States*, 588 U.S. 128, 140–41 (2019) (plurality opinion) (reasoning that "statutory interpretation [is] a 'holistic endeavor' which determines meaning by looking not to isolated words, but to text in context, along with purpose and history."). So, the phrase, "proposed issuance," must be read in context with the meaning of both 'proposed' and 'issuance,' 10 U.S.C. § 3406(f). Definitionally, to issue a task order is to award an agency contract, *see Computer World Servs. Corp.*, 173 Fed. Cl. at 585–86, and to propose is to "offer[] for . . . acceptance," *Proposal*, BLACK'S LAW DICTIONARY (11th ed. 2019). Putting the definitions together, a task order's proposed issuance exists when an agency can offer to award a contract that can be accepted by a successful party—and, here, no valid award could be offered or accepted.

This definition introduces a crucial question: What prerequisite is required for an agency to offer, *i.e.*, 'propose,' the issuance of a task order? An agency solicitation can only "solicit goods or services" to satisfy actual needs or obligations. *Mori Assocs., Inc.*, 113 Fed. Cl. at 37; *cf. Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) (explaining that, under 28 U.S.C. § 1491(b)(1), the federal contracting acquisition process is constructed around determining government "need"). Hence, an agency cannot "carelessly guess at its needs" when proposing a contract because its requests must result in real satisfaction. *Medart, Inc.*, 967 F.2d at 581; *see Applied Companies*, 325 F.3d at 1334–35 (reaffirming *Medart, Inc.*); *Fed. Grp., Inc.*, 67 Fed. Cl. at 97 (agency needs must be "'realistic'" (citing 48 C.F.R. § 16.503)). Consequently, only when an obligation—the goods or services required to fulfill agency needs—exists can the agency offer, or put differently, propose to award a contract, for only then can a successful party, like Siemens, accept the contract to satisfy the need itself.

Agencies are, of course, welcome to reevaluate their needs. Organizational demands do shift. But revaluating needs assumes that a need existed initially. If no contractual obligation could be satisfied, or was already satisfied, by a preceding

---

[3]     FASA unequivocally blocks a claim based on the awarded components—Sigonella, Rota, and Naples—anyway. 10 U.S.C. § 3406(f); *e.g.*, *SRA Int'l, Inc.*, 766 F.3d at 1413; *22nd Century Techs., Inc.*, 57 F.4th at 999; *Computer World Servs. Corp.*, 173 Fed. Cl. at 585.

contract, a subsequent offer to fulfill that same need is unacceptable because no "obligation to support the contract" exists. *Torncello v. United States*, 681 F.2d 756, 769 (Ct. Cl. 1982). An offer that cannot be accepted is a nullity; it is an illusion. *Id.* Often, when a contract is terminated "without consequence" to the parties' right(s), the discontinuance can prove that the contract was unacceptable and thus illusory. *Woll v. United States*, 45 Fed. Cl. 475, 478 (1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000). That scenario allegedly occurred here—but Siemens was nonetheless harmed.

The U.S. Navy, as exemplified in internal communications and later in communications with Siemens, awarded energy conservation contracts at Camp Lemonier and Souda Bay **before** proposing the Solicitation at issue. *E.g.*, Compl. at 9–12, 14–15. This necessarily implies that the U.S. Navy had no actual need—a fact it should have been aware of—prior to proclaiming that it would eventually award the Solicitation to Siemens. *Id.* Neither could the U.S. Navy award the Solicitation nor could Siemens have accepted the Solicitation award because the U.S. Navy had already fulfilled its need for energy conservation at Camp Lemonier and Souda Bay. Indeed, when the U.S. Navy terminated the Camp Lemonier and Souda Bay contract components, it did so aware that the award was of no consequence; its energy conservation needs were allegedly already fulfilled by a prior contract. *Id.* at 13–17. In short, no agency need equals no offer that can be accepted; or put differently, no proposed task order existed. FASA's jurisdictional bar is therefore inapplicable for that reason.

**2**

The protest must be "in connection with" the proposed or issued task order for the jurisdictional bar to apply. 10 U.S.C. § 3406(f). While, usually, "*any claim . . .* made 'in connection with the issuance or proposed issuance of a task or delivery order' is beyond our subject-matter jurisdiction," *Computer World Servs. Corp.*, 173 Fed. Cl. at 585 (emphasis in original) (relying, in part, upon *SRA Int'l, Inc.*, 766 F.3d at 1413), the Federal Circuit recently recognized an exception in *Percipient.ai, Inc.* that applies here.

*Percipient.ai, Inc.*—like its sister Federal Circuit cases, *SRA Int'l, Inc.* and *22nd Century Techs.*—links the 'in connection with' element to the form of relief requested by a plaintiff. *See SRA Int'l, Inc.*, 766 F.3d at 1414 (reasoning that, while not "dispositive," relief sought can inform the purpose of a plaintiff's claims); *cf., e.g.*, *Computer World Servs. Corp.*, 173 Fed. Cl. at 586. For instance, Percipient.ai, Inc. did "not challenge the issuance of" any task order specifically. *Percipient.ai, Inc.*, 104 F.4th at 849–51. Rather, it sought a revaluation of the statutory language used by the agency to issue task orders generally. *Id.*

Hypothetically, if the Camp Lemonier and Souda Bay contract components were proposed, *Percipient.ai, Inc.* directly applies because Siemens "did 'not assert the wrongfulness of, or seek to set aside, any task order' or an agency's corrective action of a task order that was issued or pending." *Computer World Servs. Corp.*, 173 Fed. Cl. at 586 (quoting *Percipient.ai, Inc.*, 104 F.4th at 846–47). No task order related to Camp

Lemonier and Souda Bay will be tossed aside, like in a plethora of other blocked cases, *Computer World Servs. Corp.*, 173 Fed. Cl. at 585; *Prime Physicians, PLLC*, 174 Fed. Cl. at 196, given that Siemens does not seek that result, *see* Compl. 18–24; Pl.'s Resp. at 13. Nor could Siemens even demand this result, for the U.S. Navy has *already* rescinded those contract components. *See* Compl. at 13–17; *cf. Computer World Servs. Corp.*, 173 Fed. Cl. at 586 ("Obviously, to rescind the Task Order connects the relief to the Task Order itself."). Moreover, Siemens' claim is not predicated upon the "wrongfulness" of a task order's contractual requirements. *Computer World Servs. Corp.*, 173 Fed. Cl. at 586. Instead, Siemens only seeks to be reimbursed after the U.S. Navy, in violation of its statutory obligations, allegedly mislead Siemens about its needs, making this case like *Percipient.ai*. *See* Compl. 18–24; Pl.'s Resp. at 13. Siemens' lawsuit is therefore not in connection with a task order, making FASA's jurisdictional bar inapplicable.

Fittingly, by battling this comparison, defendant only further highlights its applicability. For instance, at oral argument, the Court asked: "Well, it seems that [Siemens is] asking the [U.S.] Navy to give them money because they were misinformed by the [U.S.] Navy for whatever reason?" Oral Argument 24:4–24:7. In answering, defendant's counsel affirmed that, in any other situation, the remedy of restitution is available; only the supposed existence of a task order eliminates the Court's authority—an inapplicable point. *Id.* at 23:16–24:7.

**B**

Defendant's reliance on collateral estoppel is also unsuccessful. Def.'s Mot. at 14–15. Siemens' parallel appeal of the Armed Services Board of Contract Appeals' decision concerned whether the U.S. "Navy was contractually obligated to reimburse it" under the IDIQ; but here, Siemens seeks reimbursement under statutory obligations, not contractual ones. *Compare Siemens Gov't Techs., Inc.*, 2024 WL 2043201, at *2, *with* Compl. at 21, 23. Both cases obviously concern different "legal principles"— evaluating contractual versus statutory duties—and, therefore, Siemens is not seeking to relitigate already adjudicated issues, making collateral estoppel inapplicable. *Montana v. United States*, 440 U.S. 147, 157 (1979); *see Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 235 (2001) ("While a litigant must have [its] day in court, [it] is not entitled to repeat that same day in a different court.").

"Collateral estoppel is only appropriate if the issue in the current litigation is identical to [the] issue decided in the [previous] action," *Biafora v. United States*, 773 F.3d 1326, 1333 (Fed. Cir. 2014), and, if so, would preclude the Court from adjudicating the case, *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). With this outcome, the doctrine is unsurprisingly strenuous, and only applies when all four requirements are established:

> (1) the issue being presented is identical with the issue previously adjudicated; (2) the issue was actually litigated in the prior action; (3) the resolution of the issue was essential to a final judgment in the prior action;

and (4) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior action.

*Google LLC v. Hammond Development International, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) (quoting *In re Freeman*, 30 F.3d at 1465). By analyzing the very first requirement—that the current issues presented are "identical" to the issues in the prior adjudication—defendant's position crumbles. *Id.*

Again, the Federal Circuit in the parallel appeal rejected Siemens' argument that the U.S. Navy was *contractually* obligated under the IDIQ to reimburse Siemens for its bid preparation costs, *see Siemens Gov't Techs., Inc.*, 2024 WL 2043201, at *3–4, whereas, here, Siemens is seeking reimbursement of its bid preparation costs due to *statutory* violations, *see* Compl. at 21, 23. Because there are different "legal principles" at work in the previous and current litigation—*i.e.*, whether statutory text, as opposed to an IDIQ contract, requires reimbursement—the issues are not identical for collateral estoppel purposes. *Montana*, 440 U.S. at 157. For this reason alone, as all its requirements must be met, collateral estoppel does not apply to the present dispute.[4]

\* \* \*

Defendant's Motion to Dismiss, ECF No. 25, is **DENIED**. The Court **SHALL** hold a status conference on **April 15, 2025, at 3:00 PM EDT** to discuss the case's next stage.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[4] Defendant, in footnote four of its Motion, argues that Siemens' claim is a "Contract Disputes Act" issue because Siemens believes the U.S. Navy "failed to honor a contractual relationship." Def.'s Mot. at 15 n.4. In response, Siemens affirms that it is not making a Contract Disputes Act claim. Pl.'s Resp. at 14. The Court sees no reason to distrust this affirmation, nor does the Court believe Siemens is making such a claim anyway. This case involves statutory obligations, not contractual ones.